**In re GRAND JURY PROCEEDINGS.**
**UNITED STATES of America,**
**Plaintiff-Appellee,**
v.
**James W. LAWSON,**
**Defendant-Appellant.**

No. 79–4346.

United States Court of Appeals,
Ninth Circuit.

July 2, 1979.

As Modified on Denial of Rehearing and Rehearing En Banc Sept. 26, 1979.

David Allen, Seattle, Wash., Allen Dershowitz, Jeanne Baker, Rosenberg, Baker & Fine, Cambridge, Mass., for defendant-appellant.

Francis J. Diskin, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before SNEED, ANDERSON and HUG, Circuit Judges.

SNEED, Circuit Judge:

James Lawson, an attorney, appeals from a May 17, 1979 order and commitment as a recalcitrant witness under 28 U.S.C. § 1826. Appellant refused to provide a grand jury with the names of and fee arrangements with certain unnamed client(s). We reverse.

## I.  FACTS

In prior proceedings, appellant, an associate with a Boston law firm, represented two individuals who were arrested in connection with a conspiracy to violate the narcotics laws. *United States v. Moriarty, et al.*, CR 78–355V, Western District of Washington. Prior to their trial, both individuals plead guilty to their charges and

were each sentenced to one year imprisonment with a special parole term of two years. Before sentencing, the individuals testified under grants of immunity before the federal grand jury in the Western District of Washington, which was investigating the marijuana distribution scheme in which the individuals had been involved. Specifically, the two individuals were questioned as to how they had come to retain appellant's law firm to represent them in the *Moriarty* case and who had paid for that representation. On April 9, 1979, a few days after the individuals testified, appellant himself was subpoenaed to appear before the grand jury. The subpoena commanded him to bring financial records and other records and correspondence relating to the investigation of the firm's representation of defendants in *Moriarty*.

On May 15, 1979, appellant appeared in answer to the subpoena at the United States courthouse in Seattle. Before the district court, he alleged that all of the information requested about the identity of, and payment of fees by, his unnamed client(s) was covered by the attorney-client privilege and other privileges. At that time appellant also informed the court that he was represented by Massachusetts counsel who could not appear at that time but was willing to brief the law. The judge issued an order compelling appellant to testify, basing the order on a memorandum of law and excerpts from the grand jury testimony of the two individuals appellant represented in *Moriarty*. Thursday, May 16, 1979, appellant appeared before the grand jury and refused to answer questions regarding those who paid the fees in *Moriarty*. Appellant asserted his own Fifth Amendment right against self-incrimination as one ground for his refusal. Later that day appellant received a grant of immunity after a hearing. The following morning, May 17, 1979, the judge again signed an order compelling testimony. Appellant informed the court he still would not testify before the grand jury. The district judge then ordered him committed to custody under 28 U.S.C. § 1826(a), but provided for a stay pending appeal to this court. Appellant filed this appeal May 31, 1979.

## II.  28 U.S.C. § 1826

28 U.S.C. § 1826(a) provides that "[w]henever a witness in any proceeding before or ancillary to any court or grand jury . . . refuses *without just cause shown* to comply with an order of the court to testify" confinement may be ordered summarily (emphasis added). At issue is whether appellant in this case had a just cause not to comply with the district court's compulsion order. Appellant argues four separate justifications for his refusal:

1.  That the information sought is protected by the attorney-client privilege between him and unnamed client(s) who may have undertaken payment of the fees for representing the convicted conspirators;

2.  That appellant properly could assert vicariously the Fifth Amendment right against self-incrimination of his unnamed client(s);

3.  That forced disclosure would violate his unnamed client(s)' Sixth Amendment right to effective assistance of counsel;

4.  That disclosure of the information would violate appellant's ethical obligation to guard his client(s)' confidences.

Because we find the attorney-client privilege applicable in this instance, we do not discuss any other possible justifications for appellant's refusal. Prior to reaching the merits of his assertion, however, we must dispose of appellant's due process contention.

## III.  DUE PROCESS

Appellant argues that his due process rights were violated in that he was denied the right to be represented by his retained attorney and to have his attorney file briefs and offer oral argument before the district court and that the district court relied on *ex parte* and *in camera* submissions made without notice to him. This court recognizes the necessity of due process protections in contempt proceedings. *See, e. g., United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973). On the record, however, we believe appellant's due process

rights were not violated. His conduct before the district court belies any desire to preserve these rights. At no time did appellant request a continuance or demand the right to have his attorney present. In fact, at the hearing immediately preceding the commitment order, appellant expressed the desire *either* to brief the law before the district court *or* to have commitment stayed pending expedited appeal. Although the material on which the district court based the compulsion order was not originally submitted to appellant, he did receive it the day before his commitment hearing. He was given an opportunity to submit material; instead, he appeared content to wait and argue the legal issue before this court on appeal. No material facts are at issue. In this particular setting, therefore, it would be an empty gesture to remand on due process grounds. Appellant's procedural due process rights were not violated. We proceed, therefore, to evaluate the availability of the attorney-client privilege.

## IV. ATTORNEY–CLIENT PRIVILEGE

█ We begin by recognizing that, as a general rule, where a party demonstrates that there is a legitimate need for a court to require disclosure of such matters, the identity of an attorney's clients and the nature of his fee arrangements with his clients are not confidential communications protected by the attorney-client privilege. *In re Michaelson*, 511 F.2d 882, 889 (9th Cir.), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975); *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960). This general rule is qualified by an exception. Such information is privileged "where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought." *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977); *Baird v. Koerner, su-*

*pra*, 279 F.2d at 630. This exception itself is a limited one:

> Because the attorney-client privilege is not to be used as a cloak for illegal or fraudulent behavior, it is well established that the privilege does not apply where legal representation was secured in furtherance of intended, or present, continuing illegality. . . . The crime or fraud exception applies even where the attorney is completely unaware that his advice is sought in furtherance of such an improper purpose. . . .
>
> To invoke the exception successfully, the party seeking disclosure (here the Government) must make out a *prima facie case that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity.*

*United States v. Hodge and Zweig, supra,* 548 F.2d at 1354. (Citations omitted, emphasis added.)

█ In this case, the names of appellant's undisclosed client(s), and fee arrangements involving other conspirators, would implicate those persons in the past conspiracy.[1] Assuming legal advice was sought for that activity, a not unreasonable assumption under the circumstances of this case, the information fits the exception to general admissability. The focus of analysis then must be whether, in this case, the government met its burden of establishing a prima facie case that appellant was retained in order to promote intended or continuing criminal or fraudulent activity. We hold that it has not.

█ The government depends for its prima facie case upon an affidavit submitted by the Assistant United States Attorney responsible for investigating the marijuana smuggling and distribution scheme. His affidavit contained approximately two and one half pages of grand jury testimony given by the two individual

---

1. The government did not challenge the existence of an attorney-client relationship between the appellant and certain undisclosed clients until it filed its petition for rehearing en banc. This is too late. Nothing in this opinion, however, is intended to preclude the raising in a timely fashion the issue whether an attorney does in fact represent unnamed clients. Nor does this opinion intend to address the manner in which an attorney-client relationship with unnamed clients is to be established.

clients in *Moriarty* who testified under immunity grants. The government contends the affidavit demonstrates that it was represented to the co-participants in the drug smuggling conspiracy that their legal fees would be paid following their arrests and that this is evidence of continuing illegal conduct, *viz.*, a conspiracy to obstruct justice. *See In re Michaelson, supra.*

We have reviewed this affidavit and find it insufficient to establish a prima facie case of continuing illegal conduct. Far from indicating a preexisting commitment to cover legal expenses, the affidavit suggests that co-participants did not know prior to arrest that their fees would be covered. The mere fact that they did not pay their own fees is insufficient to evidence a conspiracy to obstruct justice. The government has made no showing that continuing illegal or fraudulent activity exists on these facts. We may suspect that such activity exists, but that is not enough. Police and prosecutors must at times act upon bare suspicion; judges must not so act. Appellant thus had a just reason to assert the attorney-client privilege and the commitment order under 28 U.S.C. § 1826 is REVERSED.