803 F.2d 493
 84 A.L.R.Fed. 833, 55 USLW 2267, 21
Fed. R. Evid. Serv. 1192
 In re GRAND JURY SUBPOENAS.
UNITED STATES of America, Appellant,
v.
Robert J. HIRSCH, Walter B. Nash III, William G. Walker,
Natman Schaye, Bertram Polis, and William J.
Redondo, Appellees.
 No. 85-1044.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 8, 1985.
Decided Oct. 27, 1986.
 
 John Roll, Asst. U.S. Atty., Tucson, Ariz., for appellant.
 John W. McDonald, Chandler, Tullar, Udall & Rehair, Tucson, Ariz., for appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before GOODWIN, ALARCON, and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 The United States appeals from a district court order quashing a portion of subpoenas duces tecum issued by a grand jury. The subpoenas directed appellees, six attorneys, to identify the party or parties (fee-payer) retaining their legal services to represent five defendants who had been the subject of a joint prosecution and to provide information regarding the fee arrangements associated with that representation. The district court quashed that portion of the subpoenas requiring the attorneys to identify the fee-payer, finding that disclosure would violate the attorney-client privilege. Because we conclude that the fee-payer's identity is not protected by the attorney-client privilege, we reverse and remand.
 
 I.
 
 2
 On March 23, 1984, Guillermo Soto-Leal, Ricardo Bustamonte, Ruben Cruz-Sinotez, Francisco Valles-Valencia and Francisco Villa-Tapia were arrested at a residence in Tucson, Arizona. A search of the premises disclosed approximately 32,000 pounds of marijuana and numerous drug ledgers detailing a multimillion-dollar marijuana conspiracy. According to the ledgers, between June 1983 and March 1984, the organization responsible for the marijuana at the residence distributed approximately 180,000 pounds of marijuana worth an estimated $90 million.
 
 
 3
 On March 25, 1984, while those arrested were still in custody and before their identities had been publicly disclosed, William Redondo contacted the Drug Enforcement Administration (DEA) and indicated that he represented those arrested at the Tuscon residence. When asked the names of his clients, Mr. Redondo was unable to identify any of the five men in custody. A short time later Mr. Redondo telephoned the DEA and identified two of the five men, Soto-Leal and Bustamonte. On March 26, Mr. Redondo entered a special appearance on behalf of all five defendants at their initial appearance before the United States Magistrate.
 
 
 4
 On April 5, 1984, attorneys Robert Hirsch (for Villa-Tapia), Walter Nash (for Soto-Leal), William Walker (for Valles-Valencia), Natman Schaye (for Cruz-Sinotez), and Bertram Polis (for Bustamonte), appeared on behalf of their respective clients and completed designation of retained counsel forms. On April 23, 1984, the five defendants were indicted along with two other individuals. Trial commenced in July 1984.
 
 
 5
 Defendants Villa-Tapia and Cruz-Sinotez and the two other individuals were acquitted. Defendant Soto-Leal was found guilty of conspiracy to distribute, and possession of, over 1000 pounds of marijuana. Defendants Bustamonte and Valles-Valencia were found guilty of possession of over 1000 pounds of marijuana.
 
 
 6
 At their appearance before the magistrate, all five defendants indicated that they had minimal financial resources. Later, at trial, counsel for Cruz-Sinotez and Villa-Tapia attempted to present evidence regarding the poverty of their clients, stating that the clients had not paid their legal fees and did not know who had.
 
 
 7
 On November 14, 1984, a DEA agent testified during grand jury proceedings regarding the continuing investigation of the organization which had employed the five defendants. The grand jury indicated that it would be helpful if the government were to issue subpoenas to the six attorneys regarding the identity of the fee-payer and the fee arrangements for representation of the five defendants.
 
 
 8
 Subpoenas were subsequently served requiring the six attorneys to appear before the grand jury and to bring all records concerning the payment of fees on behalf of their respective clients in the marijuana prosecution, including the amount of fees, form of payments, and payer. Appellees filed a motion to quash the subpoenas, asserting that the requested information was protected by the attorney-client privilege and that disclosure would violate the constitutional rights granted by the Fifth and Sixth Amendments to the attorneys' clients.
 
 
 9
 The government opposed the motion to quash and the district court held a hearing. At the hearing, attorney Walker testified that he was certain indictments would be issued if the identity of the fee-payer were revealed. Thereafter, the court ordered the six attorneys to furnish in camera affidavits detailing the circumstances surrounding their employment to represent the five defendants and showing the existence of an attorney-client relationship between the attorneys and the third-party fee-payer.
 
 
 10
 On February 5, 1985, after reviewing the in camera affidavits, the district court found that to force the attorneys to reveal the name of the fee-payer would probably implicate that party in the criminal activity for which he sought legal advice. The court also found that the government had not made out a prima facie case that the attorneys were retained to promote intended or continuing criminal activity. The court quashed that portion of the subpoenas requiring disclosure of the identity of the fee-payer, but ordered the attorneys to submit affidavits to the government regarding the amount of fees paid, and when and how they were paid. The court found it unnecessary to rule upon the other claimed grounds for quashing the subpoenas.
 
 II.
 
 11
 Appellate jurisdiction in this case rests on 18 U.S.C. Sec. 3731 (1982). In re Grand Jury Subpoenas (Kiefaber), 774 F.2d 969, 972-74 (9th Cir.1985). See also In re Witnesses Before Special March 1980 Grand Jury, 729 F.2d 489, 490 n. 3 (7th Cir.1984); In re Grand Jury Subpoena (Kent), 646 F.2d 963, 967 (5th Cir.1981); In re Grand Jury Empanelled (Colucci), 597 F.2d 851, 855-57 (3d Cir.1979); Nixon v. Sirica, 487 F.2d 700, 721 n. 100 (D.C.Cir.1973).
 
 III.
 
 12
 We review the district court's factual determinations under the clearly erroneous rule, and review its decision to quash the grand jury subpoenas for abuse of discretion. See In re Grand Jury Matters, 751 F.2d 13, 16 (1st Cir.1984); In re Grand Jury Subpoenas (Lahodny), 695 F.2d 363, 365 (9th Cir.1982). The district court's conclusion that an attorney-client relationship exists between appellees and the undisclosed fee-payer involves a mixed question of law and fact, and is reviewed de novo. See United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The burden is on the party asserting the attorney-client privilege to demonstrate how the information sought fits within it. In re Grand Jury Proceeding (Schofield), 721 F.2d 1221, 1223 (9th Cir.1983); In re Grand Jury Witness (Salas and Waxman), 695 F.2d 359, 362 (9th Cir.1982).
 
 IV.
 
 13
 The in camera affidavits show that two of the attorneys, Walker and Redondo, claim some independent professional relationship with the party or parties who paid the fees in the underlying criminal actions.[1] Four of the attorneys were paid through Walker and do not know who provided the funds. Appellees admitted at oral argument that the four attorneys who received money through Walker had no legal basis for refusing to disclose that fact. Therefore, we consider only whether the attorney-client privilege bars disclosure of the fee-payer's identity based on the information contained in the affidavits of Walker and Redondo.
 
 
 14
 The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice. Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); Schofield, 721 F.2d at 1222. The privilege allows an attorney to avoid what would otherwise be a professional dilemma of cautioning a client against disclosure and rendering perhaps ill-informed legal advice or of learning all the details of a situation and perhaps increasing the perils to the client of disclosure. In re Grand Jury Subpoena Duces Tecum (Shargel), 742 F.2d 61, 64 (2d Cir.1984). The privilege does not permit an attorney to conduct his client's business affairs in secret. Schofield, 721 F.2d at 1222; Matter of Fischel, 557 F.2d 209, 211 (9th Cir.1977).
 
 
 15
 Generally, the identity of an attorney's client and the nature of the fee arrangement between an attorney and his client are not privileged. In re Osterhoudt, 722 F.2d 591, 592 (9th Cir.1983); Schofield, 721 F.2d at 1222; Lahodny, 695 F.2d at 365; United States v. Sherman, 627 F.2d 189, 190 (9th Cir.1980); United States v. Hodge & Zweig, 548 F.2d 1347, 1353 (9th Cir.1977). The fact of representation and the associated fee arrangement are preliminary, by their own nature, establishing only the existence of the relation between client and counsel, and therefore, normally do not involve the disclosure of any communication arising from that relation after it was created. Osterhoudt, 722 F.2d at 593.
 
 
 16
 Appellees argue that this case falls within an exception to the general rule that the privilege does not apply, because disclosure of the fee-payer's identity would implicate him in the very criminal activity for which legal advice was sought. The government has admitted that the subpoenas were issued to appellees in an effort to determine whether the fee-payer was involved in the underlying marijuana conspiracy. In addition, Walker testified that he was certain indictments would result if the identity of the fee-payer were revealed. However, the relevant inquiry is not whether disclosure of the fee-payer's identity would be incriminating or would lead to further grand jury indictments, but rather, whether the requested information represents a confidential professional communication.
 
 
 17
 Cases recognizing that a client's identity and the amount of fees paid an attorney may be privileged under certain circumstances rely upon Baird v. Koerner, 279 F.2d 623 (9th Cir.1960). In Baird several clients had engaged the lawyer for advice in tax matters and, on the attorney's recommendation, anonymously tendered to the IRS, through the attorney, sums due for unpaid taxes. The IRS then sought the identity of the clients even though no government investigation was pending into their tax liabilities. This court held that the general rule that a client's identity is not protected by the attorney-client privilege was inapplicable when the identification "conveys information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client." Id. at 632. The court found that the privilege applied because each client's identity showed an acknowledgment of guilt on the part of the client of the very offense on account of which the attorney was employed. Id. at 633.
 
 
 18
 Subsequent opinions have cited Baird for the proposition that a client's identity and fee arrangement with an attorney may be privileged "when the person invoking the privilege is able to show that a strong possibility exists that disclosure of the information would implicate the client in the very matter for which legal advice was sought." See, e.g., Schofield, 721 F.2d at 1223; Sherman, 627 F.2d at 191; Lahodny, 695 F.2d at 365; In re Grand Jury Proceedings (Lawson), 600 F.2d 215, 218 (9th Cir.1979) (all quoting Hodge & Zweig, 548 F.2d at 1353). As more fully explained in Osterhoudt, these opinions have misstated the principle of Baird. 722 F.2d at 593-94. It is not the law that the requisites of the attorney-client privilege are met whenever evidence regarding the fees paid the attorney would implicate the client in a criminal offense regarding which the client sought the attorney's legal advice. Id. at 592-93. Baird held that the attorney could not be compelled to reveal any information regarding the person who employed him because, under the facts of that case, the client's identity was in substance a confidential communication in the professional relationship between the client and the attorney. 279 F.2d at 632-35; Osterhoudt, 722 F.2d at 593. Similarly, the case on which Baird relied, Ex Parte McDonough, 170 Cal. 230, 149 P. 566 (1915), did not consider whether disclosure of the client's identity would be incriminating, but found that the privilege applied because the questions put to the attorney during a grand jury investigation would require him to divulge a confidential communication made by a client. Id. at 236.
 
 
 19
 Baird involved "a unique factual situation," Sherman, 627 F.2d at 191, and the exception to nonconfidentiality created by Baird has been narrowly applied by the courts. Lahodny, 695 F.2d at 364. For example, in Sherman, this court distinguished Baird in affirming a district court's order that directed an attorney to comply with an IRS summons which sought disclosure of the amount of legal fees paid by a client. 627 F.2d at 191-92. Osterhoudt also found Baird inapplicable and held that an attorney was required to provide information regarding a client's legal fees pursuant to a subpoena, even though the client had hired the attorney to represent him in the investigation before the grand jury issuing the subpoena. 722 F.2d 592-94.
 
 
 20
 Appellees claim that Lawson, 600 F.2d 215 (9th Cir.1979), which applied Baird to a third-party fee-payer situation, controls this case. We disagree. In Lawson a grand jury subpoena directed an attorney to disclose who had paid his fees in an earlier criminal action where he defended two individuals convicted of conspiracy to violate narcotics laws. The court accepted the attorney's assertion that the fee-payer was in fact a client because the government had not challenged the existence of an attorney-client relationship until its petition for rehearing. 600 F.2d at 218 n. 1. Moreover, the court assumed that the undisclosed client was involved in the conspiracy and had sought legal advice in connection with the conspiracy. Under those circumstances, the court found that the requested information was protected by the attorney-client privilege. Id. at 218.
 
 
 21
 In contrast to Lawson, appellees' in camera affidavits do not show that the fee-payer sought personal legal advice in connection with any underlying drug conspiracy. Walker's affidavit states that his undisclosed client retained him not only to represent defendant Valles-Valencia, but to perform other services "both in connection with this case and in connection with other legal matters." Redondo's affidavit states that he was asked to represent the five defendants by a "long-time client" whom he was "actively representing" at the time and that he "discussed various matters at length" with his client. There is no indication that the fee payer was involved in any past conspiracy or with the marijuana present at the Tucson residence which provided the basis for the underlying criminal charges against the five defendants.[2] Lawson may have been based upon an inference that the facts in that case included the giving of legal advice based upon confidential communications implicating the fee payer in the criminal enterprise out of which grew the fee payer's perceived need for the advice of counsel. We do not know. But in the case at bar, the affidavit of one lawyer merely asserts an on-going attorney-client relationship and the affidavit of another lawyer asserts that the lawyer discussed "various matters" with the fee payer. On these facts, there is no reason to believe that the fee payer was engaging an attorney to perform any service other than to secretly convey money from the fee payer to other lawyers to defend various persons the fee payer wanted defended.
 
 
 22
 The attorney-client privilege protects a client's identity only in limited circumstances where disclosure would convey the substance of a confidential professional communication between the attorney and the client. Appellees simply assert the unsupported conclusion that the fee-payer's identity represents a confidential communication, but have not presented any facts to this court or in the in camera affidavits to meet their burden of establishing that the requested information comes within the privilege. The subpoenas were narrowly drafted so as to require only information pertaining to the fee-payer's identity and the fee arrangements for representation of the five defendants. The substance of the actual consultations between appellees and the fee-payer will remain privileged despite disclosure of the requested information. See Sherman, 627 F.2d at 192.
 
 
 23
 Appellees argue that enforcement of the subpoenas will make them witnesses against the fee-payer client and will force them to withdraw as counsel for this client. We reject this argument because appellees have not shown why mere disclosure of the fee-payer's identity would prevent them from representing the fee-payer in any subsequent criminal action. See Osterhoudt, 722 F.2d at 594-95.
 
 V.
 
 24
 The government argues that even if the in camera affidavits establish an attorneyclient relationship between appellees and the fee-payer, it was not in the context of that relationship that the fee-payer provided legal representation for the five defendants. In the absence of any evidence linking the fee-payer to the underlying drug conspiracy, we agree.
 
 
 25
 It seems that what is really involved in this case is an attempt to employ the attorney-client privilege to shield those who might be involved in illegal activity. This shield would be unavailable if the alleged fee-payer client had given the funds to an intermediary or directly to the five defendants, rather than through an attorney. Appellees' efforts to extend the attorney-client privilege to this situation suggests the "chicanery and sharp practice pervading most of the attempts to suppress proof of professional employment." McCormick Evidence Sec. 90, at 216 (3d ed. 1984); Shargel, 742 F.2d at 64.
 
 
 26
 The attorney-client relationship is not genuine where its only purpose is to gain confidentiality for the client or to use the lawyer as a mere conduit for the payment of money. See In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 248 (2d Cir.1985) (en banc) (information that fees were paid by other clients or third persons may be sought to determine identity of a benefactor), cert. denied, 106 S.Ct. 1515 (1986); Shargel, 742 F.2d at 64 (privilege does not protect identity of "benefactor" paying legal fees of another); In re Grand Jury Proceedings (Freeman), 708 F.2d 1571, 1575-76 (11th Cir.1983) (even if fee-payers sought personal legal advice, they were not clients in the matter for which fees were paid); In re Grand Jury Proceedings (Pavlick), 680 F.2d 1026, 1029 (5th Cir.1982) (Rubin, J., concurring) (even if anonymous fee-payer became client in regard to matters about which he sought counsel, he was not a client in matter for which fee was paid); see also Baird, 279 F.2d at 630 (employment of attorney by third party is a factor which might prevent client identity from being privileged even if information conveys confidential communication). We agree with the Second Circuit that a rule allowing disclosure of the identity of a "benefactor" paying the legal fees of another will not impair an attorney's ability to give informed legal advice. Shargel, 742 F.2d at 64; see Subpoena Served Upon Doe, 781 F.2d at 248 & n. 6.
 
 
 27
 The in camera affidavits show that the fee-payer has some independent professional relationship with two of the appellees. However, in providing legal representation for the five defendants, the fee-payer attempted to purchase confidentiality for this case, rather than personal legal services, and to use the appellees as conduits for money. No genuine attorney-client relationship exists between appellees and the fee-payer with respect to the information requested by the grand jury. Any attorney-client privilege which attached to that relationship does not prevent disclosure of the identity of the party paying the legal fees for the five defendants.
 
 VI.
 
 28
 There is insufficient evidence in the in camera affidavits to justify quashing the grand jury subpoenas based on the attorney-client privilege. The fee-payer did not seek legal advice in relation to personal involvement in a past drug conspiracy. We are not persuaded that the fee-payer's identity represents per se a confidential communication within the narrow exception to the general rule that such information is not privileged. In addition, the fee-payer's identity is not privileged because no legitimate attorney-client relationship exists between appellees and the fee-payer in the matter for which the fees were paid.
 
 
 29
 The district court's order quashing the grand jury subpoenas is REVERSED and the case is REMANDED for proceedings consistent with this opinion.
 
 
 
 [1]
 None of the in camera affidavits inform as to the identity of the fee-payer. Given the limited information contained in the affidavits, the district court abused its discretion in sealing them and denying the United States Attorney access to their contents. We therefore order the affidavits unsealed, and publish them as appendices to this opinion. [see 817 F.2d 64.]
 
 
 [2]
 Appellees concede that the attorney-client privilege would not prevent disclosure of a fee-payer's identity if legal representation were secured in furtherance of intended or continuing illegality. Lawson, 600 F.2d at 218; Hodge v. Zweig, 548 F.2d at 1354. The district court found that the government had not made out a prima facie case that appellees were retained to promote intended or continuing criminal or fraudulent activity. We need not reach that issue given our holding that the attorney-client privilege does not apply to the information sought by the grand jury