**In re GRAND JURY PROCEEDINGS SUBPOENA TO TESTIFY TO: Donald A. WINE, Appellant.**

**In re GRAND JURY PROCEEDINGS SUBPOENA TO TESTIFY TO: Dale R. LUCKOW, Appellant.**

Nos. 88–1019, 88–1119.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 20, 1988.

Decided March 4, 1988.

---

Lorna A. Gilbert and Donald A. Wine, Des Moines, Iowa, for appellant.

Robert Teig, Asst. U.S. Atty., Cedar Rapids, Iowa, for appellee.

Before LAY, Chief Judge, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Donald A. Wine, an attorney, and Dale R. Luckow, his former client, appeal from orders entered in the District Court[1] for the Northern District of Iowa granting in part and denying in part their motions to quash a federal grand jury subpoena requiring Wine to appear and produce certain documents. *In re Proceedings before Grand Jury (Wine)*, No. Misc. 87–13 (N.D. Iowa Dec. 21, 1987) (Wine); *id.* (Jan. 20,

1988) (Luckow). For reversal, they argue that the district court erred in denying in part their motions to quash because the subpoenaed documents were protected from disclosure by the attorney-client privilege and the privilege against self-incrimination. For the reasons discussed below, we affirm the orders of the district court.

Wine was subpoenaed to appear before a federal grand jury on November 17, 1987, and to produce "[a]ll records of billings to, and money received from or on behalf of, Dale R. Luckow for the period 1983 to 1986 for services rendered by you or your law firm and documents setting out the nature of those services." Wine had represented Luckow in an earlier criminal tax prosecution, but, at the time the subpoena was issued, Wine no longer represented Luckow. Luckow had been the president of a local bank that had failed. The government sought the subpoenaed documents in connection with its investigation of Luckow for misappropriation of bank funds. The government suspected Luckow unlawfully used bank funds to pay his attorney's fees.

Wine filed a motion to quash the subpoena on the grounds that disclosure of the documents would violate his former client's attorney-client privilege and privilege against self-incrimination. The district court stayed Wine's appearance before the grand jury pending disposition of the motion to quash. Wine submitted the subpoenaed documents to the district court for *in camera* inspection. At the request of the district court, Wine marked those portions of the documents which reflected confidential communications between Wine and Luckow, those portions which clearly indicated the identity of the feepayer[2], and those portions which disclosed the identity of Wine's client or clients at the time of preparation of the documents or at the time

---

1. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

2. In some instances, the fee-payer was a third-party and also a client of Wine's law firm from March 29, 1984, to February 9, 1987. Throughout these proceedings, the government has assumed that the bank was the third-party fee-pay-

er. The subpoena as drafted does not seek information about the nature of the fee arrangement between this third-party and the law firm. The substance of any confidential communications between the third-party and the law firm would be protected by the attorney-client privilege.

of payment of the fees. Wine then returned the documents to the district court.

On December 21, 1987, the district court granted in part and denied in part Wine's motion to quash. The district court held that although the identity of the fee-payer and the amount of the fees paid were not privileged, certain portions of the documents were protected from disclosure by the attorney-client privilege because they contained descriptions of legal services that revealed confidential communications. The district court marked those portions with a pink highlighter. The district court also held that the contents of the documents, other than the portions so highlighted, and Wine's production of the documents were not protected by the fifth amendment privilege against self-incrimination.

After he was served with a second subpoena requiring him to appear before the grand jury on January 20, 1988, Wine filed an appeal (No. 88–1019) and a motion for stay pending appeal.

In the meantime, on January 19, 1987, Luckow filed in the district court motions for leave to file a late notice of appeal, to intervene, to quash the subpoena, and to stay enforcement of the subpoena pending disposition of the motion to quash. The government opposed these motions. Following a telephone conference call later that day, the district court orally denied the motion for leave to file a late notice of appeal as moot, granted the motion to intervene, granted in part and denied in part the motion to quash on the same grounds as Wine's motion to quash, and granted the motion to stay enforcement of the subpoena only until 2:00 p.m. the next day, in order to allow Luckow to seek a stay pending appeal. The district court also denied Wine's motion for stay pending appeal. The district court entered a written order on January 20, 1988.

Luckow immediately filed an appeal (No. 88–1119) and a motion for stay pending appeal.

We granted a temporary stay in appeal No. 88–1019 pursuant to Fed.R.App.P. 8(a). Following further consideration, we ordered the cases consolidated for purposes of appeal, vacated the temporary stay and denied the government's motion to dismiss in appeal No. 88–1019, denied the motion for stay in appeal No. 88–1119, and expedited the appeals.

On February 23, 1988, we entered an order affirming the orders of the district court granting in part and denying in part the motions to quash the subpoena. In view of the pending expiration of the grand jury term, we ordered the mandate to issue forthwith. This opinion discusses the reasons for our affirmance of the orders of the district court.

We have jurisdiction over both appeals pursuant to the exception in *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (*Perlman*). The jurisdictional principles governing appellate review of interlocutory disclosure orders involving claims of attorney-client privilege were discussed in *In re Grand Jury Proceedings (Malone),* 655 F.2d 882 (8th Cir.1981) (*Malone*).

[T]he general rule [is] that a person to whom a grand-jury subpoena is directed cannot appeal from the denial of a motion to quash the subpoena, but must first refuse to comply with the subpoena and litigate his claims in contempt proceedings. A well-established exception to this rule, however, permits an individual claiming a privilege or other interest in subpoenaed documents to appeal from an order to produce directed to a third-party custodian of the documents. The theory for allowing immediate appeal is that the appellant himself, not having the documents in his possession, cannot resist compliance in order to obtain review in contempt proceedings, and the third-party custodian cannot be expected to risk contempt to secure review on his behalf.

*Id.* at 884 (citations omitted).

■ Luckow, the client-intervenor and the party claiming a privilege in the subpoenaed documents, had a right to appeal the order compelling Wine, his former attorney and the third-party custodian of the documents in dispute, to appear and produce documents. Thus, we clearly have

jurisdiction over Luckow's appeal, No. 88–1119, pursuant to the *Perlman* exception. *See, e.g., In re Grand Jury Proceedings (Fine)*, 641 F.2d 199, 202–03 (5th Cir.1981) (client intervened in district court); *cf. Malone*, 655 F.2d at 885 (leave to intervene granted by court of appeals). Luckow's status as client-intervenor also supports our jurisdiction over Wine's appeal, No. 88–1019. *See Malone*, 655 F.2d at 885 (even if attorney had no independent right to appeal, client's intervention will prevent the appeal from failing). The arguments on the merits made by Wine and Luckow are substantially the same, if not identical, and their appeals are duplicative.

The subpoenaed documents are billing statements prepared by Wine's law firm that were sent to Luckow for professional services rendered in 1984–1987. The billing statements contain the dates of the services rendered, a general description of the services rendered, the payment due, and acknowledgement of payment received by the law firm. Some of the documents indicate the identity of a third-party fee-payer that was also a former client of the law firm. We have examined the subpoenaed documents *in camera* and agree with the district court's ruling that only those portions of the documents highlighted by the district court contain confidential professional communications protected by the attorney-client privilege.

On the merits, Wine and Luckow argue the district court erred in refusing to hold that the identity of the fee-payer was protected from disclosure to the grand jury by the attorney-client privilege. They argue that, under these circumstances, disclosure of the identity of the fee-payer would be an acknowledgement of guilt for the very offense for which Luckow sought legal advice and would constitute a final "link" in an existing chain of incriminating evidence that could lead to Luckow's eventual indictment. Wine and Luckow also argue the district court erred in refusing to hold that the act of production of the subpoenaed documents by Wine was protected by Luckow's fifth amendment privilege against self-incrimination.

■ We need not reach the question of whether the district court erred in refusing to hold the identity of the third-party fee-payer and the amount of fees paid were protected by the attorney-client privilege.[3]

---

**3.** Absent special circumstances, client identity and fee arrangements are not confidential professional communications protected by the attorney-client privilege. *See, e.g., In re Grand Jury Proceedings (85 Misc. 140)*, 791 F.2d 663, 665 (8th Cir.1986) (client identity); *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977). However, "[a] client's identity and the nature of that client's fee arrangements may be privileged where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought." *United States v. Hodge & Zweig*, 548 F.2d at 1353, *citing Baird v. Koerner*, 279 F.2d 623, 630 (9th Cir. 1960). Later Ninth Circuit cases have largely limited the *Baird v. Koerner* exception to its facts. *See, e.g., In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493, 497–98 (9th Cir.1986) (*Hirsch*).

We doubt that the *Baird v. Koerner* exception would apply in the present case. Luckow's identity as Wine's former client is already known to the government, and the district court has already protected from disclosure those portions of the subpoenaed documents which reveal confidential communications between Luckow and Wine. What Luckow seeks to shield from disclosure is the nature of his fee arrangement, specifically the identity of the third-party fee-payer. However, Luckow does not claim that the third-party fee-payer was involved in his criminal tax offense or that the third-party fee-payer sought legal advice in connection with his (Luckow's) tax prosecution. Under these circumstances, disclosure of the nature of the fee arrangement between Luckow and Wine, including the identity of the third-party fee-payer and amount of the fees paid by the third-party fee-payer, would not reveal any confidential communication and thus would not be protected by the attorney-client privilege.

Moreover, we would be reluctant to extend the attorney-client privilege to "protect the identity of a 'benefactor' so far as legal fees are concerned." *In re Grand Jury Subpoena (Shargel)*, 742 F.2d 61, 64–65 (2d Cir.1984). "Fee information may be sought as evidence of unexplained wealth which may have been derived from criminal activity, and information that fees were paid either by other clients or by third persons may be sought to determine the identity of a benefactor." *In re Grand Jury Subpoenas (Doe)*, 781 F.2d 238, 248 (2d Cir.1985) (banc), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). *Accord Hirsch*, 803 F.2d at 499; *In re Grand Jury Proceedings (Freeman)*,

Any claim of attorney-client privilege has been waived by the prior disclosure of these documents to third-parties.

Voluntary disclosure is inconsistent with the confidential attorney-client relationship and waives the privilege. *See, e.g., United States v. AT & T,* 206 U.S.App.D.C. 317, 642 F.2d 1285, 1299 (1980). "A claim that a need for confidentiality must be respected in order to facilitate the seeking and rendering of informed legal advice is not consistent with selective disclosure when the claimant decides that the confidential materials can be put to other beneficial purposes." *In re John Doe Corp.,* 675 F.2d 482, 489 (2d Cir.1982) (disclosure to accountants and underwriter counsel for purposes unrelated to legal advice); *see also Permian Corp. v. United States,* 214 U.S. App.D.C. 396, 665 F.2d 1214, 1219–21 (1981) (disclosure to SEC); *In re Grand Jury Investigation (Ocean Transportation),* 196 U.S.App.D.C. 8, 604 F.2d 672, 675 (per curiam), *cert. denied,* 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979); *see generally* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2016, at 127 & n. 71 (1970). *But cf. Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 611 (8th Cir.1977) (banc) (limited waiver theory).

In a letter to the U.S. Attorney dated August 1, 1986, Luckow's former counsel[4] acknowledged that the bank had paid Luckow's legal expenses in connection with his tax case and that the billing statements had been submitted to the bank for payment. The bank retained copies of the billing statements in its files. After the bank's failure, the Comptroller of the Currency discovered some of the billing statements in the bank's records and provided copies to the government. Brief for Appellee at 5. Luckow thus destroyed the confidential status, if any, of the documents by disclosing them to the bank. Disclosure of the billing statements was not the result of a mistake or inadvertence[5] or the wrongful act of a third-party.

 For similar reasons, Luckow cannot now claim disclosure of the documents would violate his fifth amendment privilege against self-incrimination.[6] Instead of claiming the privilege, Luckow disclosed the documents and, as a result, lost the benefit of the privilege. He simply cannot now claim that his, or his attorney's, production of the documents would be due to compulsion by the government. *See Garner v. United States,* 424 U.S. 648, 653–56, 96 S.Ct. 1178, 1181–83, 47 L.Ed.2d 370 (1976) (no compulsion if witness discloses information instead of claiming privilege); *United States v. Kordel,* 397 U.S. 1, 7–10, 90 S.Ct. 763, 766–69, 25 L.Ed.2d 1 (1970) (witness cannot claim fifth amendment privilege after answering interrogatories).

Accordingly, the orders of the district court granting in part and denying in part the motions to quash are affirmed.

---

708 F.2d 1571, 1575–76 (11th Cir.1983); *In re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026, 1029 (5th Cir.1982) (banc) (Rubin, J., concurring).

4. Luckow is now represented by another attorney in the same firm. The decision of former counsel is binding upon Luckow and new counsel. *See In re Grand Jury Investigation (Ocean Transp.),* 196 U.S.App.D.C. 8, 604 F.2d 672, 674 (per curiam), *cert. denied,* 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979).

5. Some courts recognize an exception when materials claimed to be privileged are mistakenly or inadvertently disclosed, for example, in the midst of massive expedited discovery. *See, e.g., Transamerica Computer Co. v. IBM,* 573 F.2d 646 (9th Cir.1978).

6. Like the district court, we are doubtful Luckow can claim the fifth amendment privilege under these circumstances. Luckow does not claim that he created the documents, much less that he created them involuntarily or under compulsion; the documents are billing statements created by the law firm. *See United States v. Doe,* 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984). Nor is Luckow protected by the fifth amendment privilege against Wine's production of the subpoenaed documents. *See id.* at 612–13, 104 S.Ct. at 1242. "[The] compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the [client] might have enjoyed from being compelled to produce them himself." *Fisher v. United States,* 425 U.S. 391, 402, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976).