**In re GRAND JURY SUBPOENA
c/d 91R0052–11.**

**In re GRAND JURY SUBPOENA
c/d 91R0052–12.**

**In re GRAND JURY SUBPOENA
c/d 91R0052–13.**

**Nos. M–92–19 to M–92–21.**

United States District Court,
M.D. North Carolina.
Greensboro Division.

March 19, 1992.

Randolph M. James, pro se.

Daniel S. Johnson, pro se.

D. Blake Yokley, Winston–Salem, N.C., for Gary W. Williard.

Paul A. Weinman, Asst. U.S. Atty., Greensboro, for U.S. and U.S. Atty. Robert H. Edmunds, Jr.

## ORDER

SHARP, United States Magistrate Judge.

These matters come before the court on separate motions to quash grand jury subpoenas 91R0052–11, 91R0052–12, and 91R0052–13 (hereafter, subpoenas "11," "12," and "13"). Each subpoena is directed to an attorney at law. Subpoena 11 was served upon Randolph James, an attorney who represents Jeffrey Dale Mabe. Subpoena 12 was served upon Daniel Johnson, and subpoena 13 was served upon Gary Williard. Both attorneys Johnson and Williard represent David Milton Crews.[1]

The subpoena to James calls for,

records of any and all monies transferred to attorney James or his firm, by or on behalf of Jeffrey Dale Mabe and/or Terry Gray Smith from 1987 to the present.

The subpoenas served on Johnson and Williard are virtually identical except that they call for records of transfers to those attorneys by or on behalf of David Milton Crews and/or Terry Gray Smith.

The subpoenas commanded production on February 24, 1992. James, Johnson, and Williard filed motions to quash in the period from February 21 to February 24. The government filed a written response with respect to James's motion. The court, on receiving the flurry of motions, and in view of the need for expedited treatment of grand jury matters, set the matter for oral argument on February 24.

At oral argument, movants and the government appeared and argued the grounds set out in the motions to. quash. The court reserved ruling on the legal questions involved, but called for movants to present, for *in camera* review, documents responsive to the subpoenas and any affidavits or evidentiary showings necessary to demonstrate the predicate facts of any privilege claimed. Movants have all made the required *in camera* submissions.

---

1. Attorney Johnson also represented Terry Gray Smith at one time.

In their motions filed February 21–24, movants seek to quash subpoenas 11, 12, and 13 on grounds · that (1) under Rule 17(c), Fed.R.Crim.P., they are oppressive because they violate the attorney-client privilege; (2) they are being improperly used by the United States Attorney to gather discovery relevant to other cases; (3) they cause Sixth Amendment violations because they may create actual conflicts between attorney and client; and (4) they violate the attorneys' Fifth Amendment right to be free from self-incrimination. The court will address these claims in reverse order.

1. *Assertions of Fifth Amendment Privilege.*

■ The movants' first claim is that production of the documents called for in the grand jury subpoenas could serve to incriminate them and therefore the subpoenas should be quashed. Review of the documents and statements submitted by attorneys James and Johnson shows, however, that only *partnership* records are responsive to the subpoenas directed to them. Under the well-established "collective entity ,rule," the attorneys have no basis on which to assert Fifth Amendment privilege with respect to production of partnership records. A personal privilege against self-incrimination has no application to partnership records. *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988).

■ Attorney Williard is, the submitted documents suggest, a sole practitioner; he may therefore assert Fifth Amendment protection as to his financial records.˚ The threshold requirement of such an assertion is that the party claiming Fifth Amendment privilege must make a showing that the compelled testimony (here, the act of producing records, *see generally United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 [1984] ) creates a "real and appreciable," and not a mere "trifling or imaginary," hazard of criminal prosecution. *Marchetti v. United*

*States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). The Fourth Circuit has said that the test is whether compelled information creates a real and appreciable risk that a significant link in the chain of evidence to prove guilt would be established. *United States v. Walden*, 411 F.2d 1109 (4th Cir.), *cert. denied*, 396 U.S. 931, 90 S.Ct. 271, 24 L.Ed.2d 230 (1969).

A person claiming Fifth Amendment protection may make a showing that a hazard of prosecution exists either by (1) pointing to compelled testimonial information which is incriminating in nature on its face, or (2) presenting contextual proof that shows how, in connection with other information, the called for testimony could be incriminating. *United States v. Sharp*, 920 F.2d 1167 (4th Cir.1990).

■ In the case at bar, attorney Williard's motion to quash says, *in toto* on the subject at hand, that the subpoena directed to him "violates Movant's Fifth Amendment privilege against self-incrimination." At oral argument, counsel for Williard advised that he stood on his motion and had no oral presentation to make on this issue. The court instructed counsel to submit documents responsive to the subpoena and also to submit any affidavit or declaration necessary to make out predicate facts in support of claims of privilege. Williard has submitted the documents and an "explanation" of the nature of the monies paid to him by Crews and Smith. The explanation and responsive documents show that relatively modest amounts were transferred to attorney Williard in payment for attorney's fees in representations and for reimbursement of minor costs.

On this record, attorney Williard has made no showing of a real and substantial hazard of prosecution. The responsive documents are hardly incriminating on their face. They are the kinds of financial records any attorney would have with regard to routine matters. Williard has given absolutely no contextual proof that would demonstrate how these documents could, in any sense, create a hazard of prosecution against him or a link in a chain of evidence establishing guilt. *See In re*

*Morganroth,* 718 F.2d 161, 169–70 (6th Cir. 1983). The court finds that the "hazard" of prosecution Williard raises is so "trifling and imaginary" and as to be insufficient to sustain a claim of Fifth Amendment privilege.

Accordingly, movants' requests that subpoenas 11, 12, and 13 be quashed on the basis of assertions of Fifth Amendment privilege are DENIED.

2. *Assertions of Sixth Amendment Violation.*

Movants assert that the grand jury subpoenas are violative of Sixth Amendment rights held by their clients. They claim that if they reveal fee arrangements with regard to these clients, a conflict between attorney and client will be created, and the attorneys may be called to testify against their clients.

■■■ Under the law of the Fourth Circuit and other circuits, "[o]nly the showing of actual conflict, rather than mere speculative assertions, may overcome [the obligation to answer a grand jury subpoena].... [T]he subpoena only request[s] documents relating to fee arrangements. Compliance would not [necessarily] require[] attorney disqualification." *In re Grand Jury Matter,* 926 F.2d 348, 351 (4th Cir.1991) (citations omitted). The attorneys in this case have done no more than broadly allege that they may be disqualified if the subpoenaed documents are produced; they have made no showing or how the documents could cause an actual conflict. The court has conducted an *in camera* review of the subpoenaed documents. This review reveals no manner in which production of the documents could be expected to create an actual conflict between attorney and client.[2] *See also United States v. (Under Seal),* 774 F.2d 624, 627–28 (4th Cir. 1985) (United States Attorney can devise methods of presenting fee evidence so as not to disqualify the attorney from representing his client).

3. *Assertions of Improper Use of the Grand Jury Subpoena Power.*

■■■ Movants claim that the United States Attorney is abusing the grand jury's subpoena power to gain discovery for pending civil forfeiture actions against Jeffrey Mabe and David Crews or for other possible litigations. The court finds this assertion to be entirely speculative and unsupported. The documents called for in the subpoenas are clearly within the range of relevance to the grand jury's investigation, and the movants have offered no evidence to support their claims of bad faith on the part of the United States Attorney. Accordingly, the motions to quash on the grounds of alleged improper use of the subpoena are DENIED. *See United States v. (Under Seal),* 714 F.2d 347 (4th Cir.1983) (if the sought-after information is relevant to the grand jury's investigation, conjectural possibility of other use by the prosecutor is insufficient to justify quashing the subpoena).

4. *Assertions of Oppression and the Attorney–Client Privilege.*

The claim that movants appear to press most forcefully is their assertion of attorney-client privilege with respect to documents responsive to the subpoenas. At oral argument, this ground became the focus of argument.

Movants request that the subpoenas be quashed in their entirety since (in movants' view) they call for privileged documents. They characterize the subpoenas as "oppressive." The court finds, however, nothing oppressive about the scope of the subpoenas in this case. In fact, the language of the document requests is extremely similar to that appearing in *In re Grand Jury Matter,* 926 F.2d 348 (4th Cir.1991), wherein the Court of Appeals affirmed an order denying a motion to quash.

The subpoenas are not subject to being quashed as a whole under Rule 17(c). Rather, the issue for decision is whether

---

**2.** A few documents are found in this order to be protected by attorney-client privilege. Since those documents will not be produced, the court need not be concerned with any actual conflict that could be created by their production.

there are any documents, within the scope of the requests, that may properly be withheld from production by reason of the attorney-client privilege.

The subpoenas request "any and all" records of money transferred to the attorneys (or their law firms) "by or on behalf of" certain named clients. Such a request would be expected to call for "fee documents," documents that show fees and costs charged by attorneys to their clients. Such is the case here, as *in camera* review shows.

The general contours of the attorney-client privilege are well established. In *In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir.1984), the Court of Appeals described the narrow limits of the attorney-client privilege recognized in the federal law:

> [T]he privilege applies only when the person claiming the privilege has as a client consulted an attorney for the purpose of securing a legal opinion or services and not "for the purpose of committing a crime or tort" and in connection with that consultation has communicated information which was intended to be kept confidential. . . .
>
> [T]he "essence" of the privilege is the protection of what was "expressly made confidential" or should have been "reasonably assume[d] . . . by the attorney as so intended."

*Id.* at 1355–56.

■ "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Although the protection afforded confidential communications from client to attorney promotes the public interest, the privilege nonetheless is inconsistent with the general duty to disclose and therefore impedes investigation of the truth. *NLRB v. Harvey*, 349 F.2d 900, 907 (4th Cir.1965). Accordingly, the privilege must be strictly construed. *In re Grand Jury Proceedings*, 727 F.2d at 1356. Further, the burden of

persuasion on each of the elements of the privilege is clearly upon the proponent. The proponent must provide the court with sufficient information to enable it to determine privilege; the proponent must show by affidavit that precise facts exist to support the claim of privilege. *United States v. (Under Seal)*, 748 F.2d 871 (4th Cir. 1984), *vacated on other grounds*, 757 F.2d 600 (4th Cir.1985).

■ Ordinarily, documents relating to attorney's fees or fee arrangements are not subject to the attorney-client privilege. *In re Grand Jury Matter*, 926 F.2d 348, 351 (4th Cir.1991). They do not, in most instances, reveal confidential communications.

Courts have recognized, however, a "rare circumstance" in which the attorney-client privilege may attach to fee arrangements. Privilege attaches if the fee arrangements serve to disclose a confidential communication made within the attorney-client relationship for the purpose of obtaining legal advice. *See In re Grand Jury Subpoena (Anderson)*, 906 F.2d 1485 (10th Cir.1990); *In the Matter of Grand Jury Proceedings, Cherney*, 898 F.2d 565 (7th Cir.1990); *In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493 (9th Cir.1986).

In *Cherney*, attorney David Cherney was retained to represent one Jack Hrvatin in a narcotics conspiracy trial. Hrvatin's legal fees were paid by a third party. Cherney was subpoenaed by the grand jury to be asked to disclose the identity of the fee-payer. Cherney filed a motion to quash the subpoena and submitted fee documents to the court for *in camera* review. The government conceded that the unidentified fee-payer had an attorney-client relationship with Cherney and had sought legal advice from him regarding his (the fee-payer's) involvement in the underlying narcotics conspiracy prior to Cherney's representation of Hrvatin.

The *Cherney* Court first recognized the underlying basis of the attorney-client privilege and the general rule that the identity of a client is generally not privileged. The Court stressed that the application of privi-

lege did not turn on whether the communications in question were incriminating, but whether they were confidential and made for the purpose of securing legal advice within the context of an attorney-client relationship. The fact that disclosure might tend to incriminate the unknown fee-payer would not, standing alone, be grounds for quashing a grand jury subpoena seeking the fee-payer's identity. *Id.* at 567–68.

The Court further noted, however, that a client's motive for seeking legal advice was a confidential communication that would be protectable. Because the unknown fee-payer had consulted Cherney with regard to his involvement in the drug conspiracy for which Cherney represented Hrvatin, disclosure of the fee-payer's identity would necessarily reveal the fee-payer's motive for seeking legal advice. Disclosing the unknown fee-payer's identity would reveal the substance of confidential communications between the fee-payer and Cherney. For this reason, the Court held that the unknown fee-payer's identity was protected by the attorney-client privilege. Even though the information would be incriminating, "[i]ncriminating information ... may be shielded by the privilege where it is an *integral* part of a confidential communication." *Id.* at 568. The Court of Appeals affirmed the district court's order quashing the subpoena directed to Cherney.

In *Hirsch*, five men were arrested for marijuana smuggling in Tucson, Arizona. Attorney William Redondo contacted the Drug Enforcement Administration and claimed to be the attorney for these five men, but was unable to name any of them. He called back shortly and named two of them; later, Redondo entered a special appearance for all five at their initial appearance before the court. Several days later, each of the five men had his own retained attorney, Robert Hirsch and William Walker being two of these attorneys. The grand jury subpoenaed the attorneys' fee records to find out who was paying for legal representation for the five men.

The attorneys filed a motion to quash the subpoenas and submitted affidavits and fee documents for *in camera* review. In their affidavits, attorneys Walker and Redondo advised that they had an independent professional relationship with one or more parties who were paying the legal fees for the five men; Walker received money from this fee-payer and used it to pay himself and the other attorneys. The district court quashed the portion of the subpoena that required the attorneys to identify the fee-payer.

The Court of Appeals for the Ninth Circuit began with the general proposition that a client's identity and the nature of his fee arrangement with his attorney are not privileged. The Court noted one exception, where disclosure of the fee-payer's identity would tend to implicate him in the criminal conduct for which he sought his attorney's advice. The important factor was not, however, that the communication in question be incriminating, but that it be confidential and that it meet other criteria for the application of privilege. *Id.* at 496–97.

The Ninth Circuit found in *Hirsch* that the attorneys' affidavits did not show that the unidentified fee-payer sought personal legal advice in connection with the drug conspiracy involving the five men. Walker's affidavit stated that the fee-payer had retained him not only to represent one of the five men, but to perform services "both in connection with this case and in connection with other legal matters." Redondo's affidavit stated that he was asked to represent the five men by a "long-time client" whom he was "actively representing" at that time, and that he "discussed various matters at length" with that client. In neither affidavit was there a specific affirmation that the unidentified fee-payer was involved in any past conspiracy with the five men or in the marijuana conspiracy going to trial. There was no basis for belief that the fee-payer had engaged Walker and Redondo to perform any services other than secretly conveying money to other lawyers to defend persons whom the fee-payer wanted defended. No competent evidence supported the attorneys' argument that the identity of the fee-payer was itself a confidential communication that the fee-payer was a part of the underlying drug conspiracy. Therefore, the attorney-

client privilege would not protect the unidentified fee-payer's identity. *Id.* at 498–99.

The Court of Appeals in *Hirsch* also noted that what really seemed to be involved was an attempt to use the attorney-client privilege to shield criminals from liability for their deeds. The Court stated that the privilege was not genuine where its only purpose was to use the attorney as a conduit for the payment of money. In light of the facts of the case, the Court found there was no genuine attorney-client relationship, and therefore no bar to disclosure of the unknown fee-payer's identity. *Id.* at 499.

*Cherney* and *Hirsch* both appear to be well-reasoned applications of the principles of attorney-client privilege to particular factual circumstances. *See also In re Grand Jury Subpoenas (Anderson)*, 906 F.2d 1485 (10th Cir.1990) (identity of fee-payer is privileged where an actual client paid the fee and sought advice concerning the actual case under investigation). The Fourth Circuit, in *In re Grand Jury Matter*, 926 F.2d 348 (4th Cir.1991), discussed these lines of authority, finding, in the case before it, that,

> [a]lthough some situations may exist where fee arrangement may constitute confidential communications, the mere fact that the arrangements "evidence wrongdoing by the client" does not implicate the attorney-client privilege. The attorneys offered no evidence that the arrangements, in and of themselves, were confidential communications. As the district court judge decided, the subpoena did not violate the attorney-client privilege.

926 F.2d at 352–53 (citations omitted).

In the case at bar, the documents and statements submitted *in camera* by attorneys Williard and Johnson do not meet the rigorous *Cherney* standard of showing an actual attorney-client relationship between the fee-payer and counsel, and a transfer of funds that is an integral part of a specific confidential communication, i.e., involvement in a specified drug conspiracy. Attorneys Williard and Johnson offer no showing on any of these matters, and the *in camera* documents do not serve to show such predicate facts necessary to give rise to the privilege. Accordingly, their claims of privilege fail.

 Attorney James has made sworn factual assertions that are more telling. His affidavit attests to an actual, ongoing attorney-client relationship between him and a fee-payer. The fee-payer transferred certain money to James for payment of other persons' attorney's fees. The transfers of funds were integral to the fee-payer's confidential communication of his involvement with the drug conspiracy. The court holds that documents which reveal these transactions are, under the sound reasoning of *Cherney*, shielded from the reach of the grand jury subpoena by the attorney-client privilege and should not be produced by attorney James.

Review of the *in camera* documents submitted by James reveals that only a few of them are related to the confidential communication described above. They are the Exhibit E documents and also the first fee entry appearing on Exhibit F. In producing documents responsive to the grand jury subpoena, attorney James shall withhold the Exhibit E documents and shall redact the first fee entry appearing on Exhibit F. No other documents seen *in camera* by the court are protected by the attorney-client privilege. The remaining documents are typical "fee arrangement" documents that do not disclose confidential communications.

## CONCLUSION

The motions to quash filed by attorneys Williard and Johnson are DENIED in their entirety. The motion to quash filed by attorney James is GRANTED with respect to the Exhibit E documents and the first fee entry in Exhibit F, but DENIED as to all other documents. The attorneys shall produce the responsive documents in accordance with this order within five (5) business days.

This order shall be filed on the public record. All other pleadings and documents in the file are under seal. The Clerk shall

return the *in camera* submissions to counsel thirty (30) days from this order, unless an appeal is taken.

IT IS SO ORDERED.