## In re GRAND JURY SUBPOENA (ZERENDOW).

### No. M.B.D. 95–NC–10533.

United States District Court,
D. Massachusetts.

Oct. 19, 1995.

---

Randy S. Chapman, Chapman & Chapman, Chelsea, MA, for Phelan.

Jonathan Chiel, Asst. U.S. Atty., Boston, MA, for USA.

Max D. Stern, Stern, Shapiro, Weissberg & Garin, Boston, MA, for Zerendow.

## MEMORANDUM AND ORDER

SARIS, District Judge.

## INTRODUCTION

· The government has filed two motions to compel an attorney to testify before a grand jury concerning (1) his memory of a conversation between his client and law enforcement officials and (2) the fee arrangement with his former client. The Court concludes that the first subject matter is protected under the work product doctrine but that the latter subject matter is not protected from disclosure by the attorney-client privilege.

## BACKGROUND

On July 24, 1995, the petitioner, attorney Donald Zerendow, moved to quash a grand jury subpoena requiring him to testify with respect to two subjects relating to his former client, defendant Beth A. Phelan (Crim.Action No. 95–10215), on the grounds, among others, that enforcement of the subpoena would violate the attorney-client and work-product privileges and the rights of his former client under the Sixth Amendment and the Due Process Clause of the Fifth Amendment.

His former client, who moved to intervene, also filed a motion to quash, on the grounds that the enforcement of the subpoena would be an abuse of the grand jury by permitting an improper use of the process to prepare indictments for trial, and that the subject matter was protected by the attorney client privilege.

After hearing, on August 2, 1995, the court entered an order denying the motions to quash without prejudice to a claim of attorney-client privilege or protection under the work product doctrine by either Zerendow or Phelan. On August 3, 1995, Zerendow testified for the first time at the grand jury, and declined to answer various questions on these grounds. On August 10, 1995, the government filed a motion to compel on the ground that Zerendow refused to answer questions relating to the payment of fees for work he performed on behalf of his former client Beth Phelan.

Zerendow testified again before the grand jury on September 7, 1995, and refused to answer questions asked of him relating to an interview of his former client by federal law enforcement authorities on March 11, 1994, again on the ground that such information is protected by the attorney-client privilege and work product doctrine. On September 21, 1995, the government filed a second motion to compel, which Zerendow opposes.

## DISCUSSION

1. *Work Product Doctrine.*

As of March 11, 1994, Zerendow represented Phelan in connection with a grand jury

investigation into allegations of various criminal offenses by officials at the Essex County Sheriff's Department and the Essex Process Service, Inc. ("EPS"). Phelan worked as the former office manager of EPS. On March 11, Zerendow participated in a telephone interview of Phelan by Special Agent Armando DeAngelis of the IRS and AUSA Jonathan Chiel of the United States Attorney's Office. Zerendow was in his office, and Phelan in her residence.

Over a year later, on July 13, 1995, the grand jury indicted Phelan for perjuring herself when on June 16, 1994, she told the grand jury that a deputy sheriff had picked up envelopes for officials at the Sheriff's Department from EPS no more than five times when she "well knew" he had picked up the envelopes on many more than five occasions; and that she perjured herself when she said no one else picked up envelopes for officials at the Sheriff's Department.

At the time he was subpoenaed to testify before the grand jury, the government knew that Zerendow no longer represented Phelan. Zerendow submitted an affidavit stating that he had no memory of this conversation apart from his notes. Specifically, he stated: "I made notes in the course of the interview. The notes are not verbatim. Instead, I recorded those statements which I thought at the time might be significant and ought to be preserved. At the present time, my recollection of the contents of the interview is almost wholly dependent on my notes. In particular, my recollection of what Ms. Phelan said regarding whether Joseph Bogigian picked up envelopes is based completely on my notes."

The government submitted an affidavit stating that the investigation into corruption at the Essex County Sheriff's department was ongoing, and that the grand jury was seeking to determine whether to bring additional charges against Beth Phelan for making false statements to a federal agent in violation of 18 U.S.C. § 1001 and for endeavoring to obstruct justice in violation of 18 U.S.C. § 1503 by making false statements during the course of the telephone interview.

During his grand jury testimony Zerendow declined to answer any questions relating to his memory of the telephonic interview on the grounds of the Sixth Amendment and the work product doctrine. He even declined to answer whether he had a present recollection of what was said during that interview, or to discuss the subject matter of the interview.

■ As a threshold matter, Zerendow waived any protection under the work product doctrine with respect to whether he had a recollection of the conversation and with respect to the subject matter of the conversation when he filed his affidavit. *See United States v. Nobles*, 422 U.S. 225, 239–40, 95 S.Ct. 2160, 2170–71, 45 L.Ed.2d 141 (1975) (election to present investigator as a witness waived the privilege with respect to matters covered in his testimony). Accordingly, the court orders him to answer those questions.

■ The much more difficult issue is whether his memory of the substance of that conversation, as refreshed by his notes of the interview, is protected under the work product doctrine. The court concludes that it is.

The starting point for any analysis of the work product doctrine must be the venerable *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), which was decided in the context of a civil discovery dispute. There, the Supreme Court held that the work product doctrine protected the "mental impressions contained in the files and the mind" of an opposing attorney from disclosure unless there was a "showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of [the moving party's] case or cause him any hardship or injustice." *Id.* at 509, 67 S.Ct. at 392. The court went on to hold that attempts to secure "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties" fall outside the "arena of discovery and contravene[ ] the public policy underlying the orderly prosecution and defense of legal claims." *Id.* The court's reasoning bears repetition:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients.

In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal briefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case [*Hickman v. Taylor*, 153 F.2d 212, 223] as the "Work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

.    .    .    .    .

But as to the oral statements made by witnesses to [opposing counsel], whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production. Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' re-

marks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

*Id.* at 510–11, 67 S.Ct. at 393–94.

As the First Circuit has stated, "[o]ur adversarial system of justice cannot function properly unless an attorney is given a zone of privacy within which to prepare the client's case and plan strategy, without undue interference." *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1014 (1st Cir.1988). The Supreme Court has recognized the work product doctrine as even more "vital" in criminal matters. *United States v. Nobles*, 422 U.S. at 238, 95 S.Ct. at 2170.

■    While the attorney-client privilege belongs to the client alone, the work product doctrine may be asserted by either the client or the attorney. *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 801–02 (3d Cir.1979). "The general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production thorough a subpoena or court order." *In re Grand Jury*, 106 F.R.D. 255, 257 (D.N.H. 1985).

■    Generally, an attorney's work product—"all materials prepared 'with an eye towards litigation' "—is "not freely discoverable without some showing of necessity." *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d at 1014 (citing *Hickman v. Taylor*, 329 U.S. at 511, 67 S.Ct. at 394). Courts have distinguished "between 'opinion' work product and 'ordinary' work product—the former category encompassing materials that contain the mental impressions, conclusions, opinions or legal theories of an attorney, the latter category embracing the residue." *Id.* Some courts have afforded ordinary work product only a qualified immunity subject to a showing of sub-

stantial need and undue hardship, while requiring a heavier showing to justify the production of opinion work product. *See, e.g., In re Grand Jury Investigation,* 599 F.2d 1224, 1230–31 (3d Cir.1979) (listing courts which have declined to interpret *Hickman* as clothing interview memoranda with absolute immunity from disclosure but stating that such documents will be discoverable only in the rare situation). Other courts have granted some work product absolute immunity from discovery. *See In re Grand Jury Proceedings (Duffy),* 473 F.2d 840, 848 (8th Cir.1973) (holding that a lawyer's personal recollections, notes, and memoranda pertaining to witness interviews are safeguarded absolutely).

Here, the government does not seek production of the attorney's notes of the interview of his client, but his testimony as to his recollection of that conversation. These attorney recollections fall squarely within the contours of the work product doctrine. The fact that the testimony concerns an interview between Zerendow's client and government agents, rather than an interview of a nonparty witness does not defeat, but rather enhances, defendant Phelan's and Zerendow's arguments. If it were otherwise, a defense attorney who sought to protect his client's rights by being present at an interview between his client and government agents would risk being required to expose his thought process to opposing counsel, and even worse, risk becoming a witness against his client. This would have a chilling effect on effective representation by defense counsel, and in the words of *Hickman v. Taylor,* "the interests of the clients and the cause of justice would be poorly served." 329 U.S. at 511, 67 S.Ct. at 394.

■ Neither the First Circuit nor the Supreme Court has decided whether recollections such as those sought from Zerendow are entitled to absolute or only qualified protection. *See In re San Juan Dupont Plaza Hotel,* 859 F.2d at 1015. This court need not walk the difficult lines here of determining whether an attorney's recollection of a conversation between his client and a government agent is opinion or ordinary work product, or is entitled to absolute or only qualified

protection. Even under the more lenient standard of qualified protection, the government has not met its burden of establishing good cause for production of the testimony. As both AUSA Jonathan Chiel and Special Agent DeAngelis were present during the conversation, the testimony, if consistent with their memory, will only be cumulative or corroborative. If Attorney Zerendow's memory of the conversation were inconsistent, and he testified at trial as an exculpatory witness, his notes, which he used to refresh his recollection, would have to be produced pursuant to Fed.R.Evid. 612.

Because the Court holds that the testimony which the government seeks is protected under the work product doctrine, the Court need not address rights under the Fifth and Sixth Amendments.

### 2. *Attorney–Client Privilege.*

Asserting the attorney-client privilege, Attorney Zerendow declined to answer questions before the grand jury concerning the source of his fee other than that he represented Phelan from the beginning of 1994 to November, 1994, and that he charged an hourly fee for his representation of Phelan, on the ground that disclosure of the source of payment "creates the 'strong probability' of incriminating his former client in the very matter for which she consulted him."

■ The party asserting the attorney-client privilege must meet the following requirements:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*See* 8 J. Wigmore, *Evidence,* § 2292 (1983); *see also United States v. United Shoe Mach. Corp.,* 89 F.Supp. 357, 358–359 (D.Mass. 1950). The individual asserting the attorney-client privilege has the burden of proving the applicability of the privilege. *See United States v. Layton,* 855 F.2d 1388, 1406 (9th Cir.1988), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989).

▆ The attorney-client privilege belongs to the client, not to the attorney. *See United States v. Goldberger & Dubin*, 935 F.2d 501, 504 (2nd Cir.1991). "A client may waive the privilege by testifying as to part of a privileged communication." *In re Grand Jury Investigation (Tinari)*, 631 F.2d 17, 19 n. 1 (3d Cir.1980) (citing 8 J. Wigmore, *Evidence* § 2329, at 638 (McNaughton rev. 1961)), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). Waiver of the privilege in an attorney-client communication extends to all other communications relating to the same subject matter. *In re Sealed Case*, 877 F.2d 976, 980–81 (D.C.Cir.1989).

▆ "Patently, a voluntary disclosure of information which is inconsistent with the confidential nature of the attorney client relationship waives the privilege." *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir.1993). "To avoid waiver of the privilege, a party must intend the information given to his or her attorney remain confidential." *United States v. Pappas*, 806 F.Supp. 1, 4 (D.N.H.1992). Even an inadvertent release of a document may in certain circumstances work a waiver of the attorney-client privilege. *See FDIC v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 482–84 (E.D.Va.1991); *Weil v. Investment/Indicators, Research & Management Inc.*, 647 F.2d 18, 24 (9th Cir.1981). A waiver may result from the failure to take reasonable steps to insure confidentiality. *See Marine Midland*, 138 F.R.D. at 482 (citing *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (1984)).

▆ Here the client has not demonstrated that she did not waive the attorney-client privilege. *See Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir.1981) (noting that the party asserting the privilege has the burden of proving the absence of waiver). She has already disclosed the fee arrangement by disclosing her benefactor during her grand jury testimony, and failing to assert the privilege. *Cf. Garner v. United States*, 424 U.S. 648, 655, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976) ("[T]he rule that a witness must claim the [Fifth Amendment] privilege is consistent with the fundamental purpose of the Fifth Amendment—the preservation of an adversary system of criminal justice."). Specifically, she testified that she had been referred to Zerendow by her former employer Robert Curran and his counsel, Thomas Kiley, and that she expected Curran to pay Zerendow's attorneys fees. When asked why she believed that her fees would be paid by Curran, she stated that she thought it would be in his best interest.

Phelan had counsel present at the time of her grand jury testimony and was reminded at the outset that she was entitled to consult with her attorney at any time during the course of the questioning. *See United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir.1990) (holding that where a grand jury witness was advised of his right to consult with counsel, and counsel was waiting outside the room, the witness's voluntary disclosure of communications with his attorney waived the privilege as to those communications). By testifying as to her understanding of who would pay her legal fees, she failed to take reasonable steps to preserve the confidentiality of this information and thereby waived her attorney-client privilege as to this information.

▆ In addition, it is unlikely that this case is one of the rare situations in which fee information comes under the attorney-client privilege. "It is well recognized in every circuit ... that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege." *In re Grand Jury Subpoenas (Anderson)*, 906 F.2d 1485, 1488 (10th Cir.1990); *see also United States v. Strahl*, 590 F.2d 10, 11 (1st Cir.1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979). Disclosure of fee information is not necessarily privileged "even though it *might* incriminate the client." *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir.1991) (emphasis added).

Despite this general rule, a client's identity or fee arrangement may be privileged "where there is a *strong probability* that disclosure would implicate the client in the very criminal activity for which legal advice was sought." *Anderson*, 906 F.2d at 1488 (emphasis added) (citing *Strahl*, 590 F.2d at 11–12); *see also In re Grand Jury Proceed-*

*ings (Pavlick)*, 680 F.2d 1026, 1027 (5th Cir. 1982) (holding that fee information is privileged if it provides the "last link" in an existing chain of incriminating evidence likely to lead to the "client's indictment").

Absent special circumstances, the courts have not extended the attorney-client privilege to protect a client from disclosure by her attorney of how he has been paid fees on the client's behalf, for example where a third party benefactor has paid the attorney. *See Anderson*, 906 F.2d at 1488–93; *In re Grand Jury Investigation (Tinari)*, 631 F.2d at 19; *Vingelli v. United States*, 992 F.2d 449, 453 (2d Cir.1993); *In re Grand Jury Proceedings (Wine)*, 841 F.2d 230, 233 n. 3 (8th Cir.1988) (expressing reluctance to extend the attorney-client privilege to protect the identity of a benefactor so far as legal fees are concerned).

Nor is there any suggestion that the third-party benefactor has an attorney-client privilege that is applicable to the matter at hand. *Cf. In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493, 499 (9th Cir.1986) (an attorney-client relationship is not genuine where its only purpose is to "use the lawyer as a mere conduit for the payment of money"); *In re Grand Jury Proceedings (Freeman)*, 708 F.2d 1571, 1575–76 (11th Cir.1983) (no attorney-client privilege for fee arrangements even where attorney served as counsel to both fee payors and grand jury witnesses because the fee payors were not clients "in the matter for which the fee was paid and about which [the attorney] was interrogated").

Seeking to squeeze within the narrow exception, the attorney argues that disclosure of the fee arrangement and identity of the third party benefactor provides a direct linkage to the incrimination of the client in the matter as to which she sought advice. In the leading case on the legal advice exception, *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960), the Ninth Circuit held that an attorney was not required to disclose the identity of a client when that client consulted him regarding improperly paid taxes and the attorney forwarded an anonymous check to the IRS on the client's behalf, reasoning "a disclosure of the persons employing the attorney-appel-lant would disclose the persons paying the tax; the fact of payment indicates clearly what is here specifically admitted, that an additional tax was payable and that the unknown clients owed it." *Id.* at 630. However, the *Baird* court suggested that one factor mitigating against protection of the privilege would be employment of the counsel by some third person, "not the client nor his agent." *Id.* at 631.

It is true that payment of attorneys fees by the client's former supervisor *might* inculpate the client in the present charges in the sense that it establishes an ongoing relationship between them, and perhaps a motive to fabricate. Of greater concern is the argument that payment of Phelan's fees by the Sheriff's department might also implicate her in the ongoing investigation into corruption at the Essex County Sheriff's Department. However, the mere fact that a former employer is paying the attorneys fees to an employee can have innocent explanations as well. *See United States v. Buitrago–Dugand*, 712 F.Supp. 1045, 1051 (D.P.R.1989) ("It is not unheard of, nor particularly unusual, for an individual or a corporation to pay the legal fees of another."). This fee arrangement information with respect to a client who is already under indictment does not create the strong probability of incriminating plaintiff in the present charges, that existed in the *Baird* case. *See also United States v. Gertner*, 873 F.Supp. 729, 735 (D.Mass.1995) (under the "obviously very narrow and strongly fact-driven" legal advice exception, the disclosure by an attorney representing a John Doe in a pending narcotics case of a large unexplained cash income "could certainly be incriminating evidence in the pending narcotics prosecution"), *aff'd on other grounds*, 65 F.3d 963 (1st Cir.1995). There is no direct link between the evidence and incrimination of the client. Nor is there a strong probability that this evidence will be the last link to a superseding indictment on other charges.

To the extent that testimony concerning the third party fee payments incriminates Ms. Phelan as a participant in an ongoing conspiracy to obstruct justice, the privilege would fail under the crime/fraud exception.

*See generally Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933). However, here the government has made no attempt to portray the relationship between the defendant and her former attorney as part of an agreement to furnish legal assistance in furtherance of such a conspiracy.

The affidavits of the government establish that the primary motivation behind the motion to compel is the ongoing grand jury investigation into corrupt payments at the Essex County Sheriff's Department, not preparation for the trial of Ms. Phelan. (See Docket 11).[1]

Accordingly, the court allows the government's motion to compel the attorney to answer questions concerning the fee arrangements with his client or any third party benefactor.

### ORDER

The United States' motion to compel (Docket 17) is **DENIED,** except to the limited extent discussed in the memorandum. The motion to compel (Docket 15) is **ALLOWED.**

---

1. Because the parties did not brief the Fifth or Sixth Amendment claims with regard to the fee information, the Court will not address these constitutional issues.