**UNITED STATES of America**

v.

**Paul E. LOWE, Defendant.**

**Criminal No. 95–10404–PBS.**

United States District Court,
D. Massachusetts.

Oct. 21, 1996.

Order Supplementing Decision Nov. 5, 1996.

Peter Parker, Federal Defender Office, Boston, MA, for Paul E. Lowe.

Wendy J. Murphy, Brody, Hardoon, Perkins & Kesten, Boston, MA, for Rape Crisis Services of Greater Lowell, Inc.

Paula J. DeGiacomo and Despena F. Billings, United States Attorney's Office, Boston, MA, for the U.S.

## SUBSTITUTE MEMORANDUM AND ORDER

SARIS, District Judge.

### Introduction

This case raises issues of first impression concerning the confidentiality of rape counselling records under federal law.

Defendant Paul E. Lowe is charged with carjacking, in violation of 18 U.S.C. § 2119; kidnapping, in violation of 18 U.S.C. § 1201; forcible transportation of another for criminal sexual activity, in violation of 18 U.S.C. § 2421; and using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). The government makes the following allegations. On December 10, 1995, Lowe assisted a young woman[1] parked on the side of the road during a snowstorm, in Lowell, Massachusetts. Brandishing a gun, he then forcibly entered her vehicle and drove her to New Hampshire where, in the front passenger seat of the car, he forced her to perform oral sex on him and raped her vaginally. He then drove her in her car back to Lowell, Massachusetts, where he left her. Later, in a statement to the police, the defendant admitted to having sexual intercourse with the woman in an apartment, but insisted that she consented.

After the alleged rape, K. sought rape crisis counselling at the Rape Crisis Services of Greater Lowell, Inc. ("Center") beginning on December 18, 1995 and continuing until the present.

The trial is scheduled to begin on October 28, 1996. On September 19, 1996, defendant served a subpoena on the Center seeking all documents relating to the alleged victim. Pursuant to prior court order, the defendant notified the Center and the government notified K. that they were allowed the opportunity to object to defendant's request for the records. Defendant was required to file an *in camera* submission concerning the basis for the defense so that this Court could evaluate the validity of defendant's trial subpoenas, some of which the government contended harassed K.

After discussions with the prosecutor, K. consented to a limited *in camera* review by the court to determine whether there is exculpatory information in the records, thereby waiving her rights under Mass.G.L. ch. 233,

1. In order to protect her anonymity, I refer to the alleged victim as K. throughout this memoran-

§ 20J [2] and all other applicable law without prejudice to reasserting the privilege should this court determine that the records contain exculpatory material. K. also declined the initial offer of the court via the prosecutor to appoint independent pro bono counsel to evaluate her rights as a rape victim and/or to participate in the hearing held on this matter on October 15, 1996.

The Center now asserts (1) that the waiver was defective because it was not voluntarily given and (2) that it possesses independent standing, despite K.'s waiver, to press the unlawfulness of an *in camera* review by this court.

### Discussion

#### a. The Federal Privilege

Although K. has a privilege under state law pursuant to Mass.G.L. ch. 233, § 20J, this Court must determine whether there is a privilege for rape counselling records under federal law. In *Jaffee v. Redmond,* — U.S. —, —, 116 S.Ct. 1923, 1931, 135 L.Ed.2d 337 (1996), which involved a pretrial discovery dispute in a civil wrongful death and civil rights action, the Supreme Court recently held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." Because the "vast majority of states explicitly extended a testimonial privilege to licensed social workers," the Supreme Court recognized a privilege for communications with licensed clinical social workers as well, stating that "[t]heir clients often include the poor and those of modest means who could not afford the assistance of a psychiatrist or psychologist ... but whose counselling sessions serve the same public goals." *Id.* The Court noted, however, that "[l]ike other testimonial privileges, the patient may of course waive the protection." *Id.* at —

dum and order.

**2.** Section 20J provides: "Such confidential communications shall not be subject to discovery and shall be inadmissible in any criminal or civil proceeding *without the prior written consent of the victim to whom the report, record, working*

n. 14, 116 S.Ct. at 1931 n. 14. It also pointed out that there would be situations where "the privilege must give way." *Id.* at — n. 19, 116 S.Ct. at 1932 n. 19.

Here, the rape crisis counsellors are not licensed psychotherapists or social workers. Under Massachusetts law, a sexual assault counsellor is defined as "a person who is employed by or is a volunteer in a rape crisis center, has undergone thirty-five hours of training, who reports to and is under the direct control and supervision of a licensed social worker, nurse, psychiatrist, psychologist or psychotherapist and whose primary purpose is the rendering of advice, counselling or assistance to victims of sexual assault." Mass.G.L. ch. 233, § 20J. *Jaffee* does not control a determination of whether the federal privilege extends to communications with a rape crisis center employee or volunteer who is not a licensed social worker or psychotherapist.

The Center and the government argue that *Jaffee* should be extended to create a federal privilege under Fed.R.Evid. 501 for rape counselling records because a majority of states and the District of Columbia have adopted a privilege for rape counselling communications. See U.S. Dep't of Justice, *Report to Congress: The Confidentiality of Communications Between Sexual Assault or Domestic Violence Victims & Their Counsellors, Findings and Model Legislation,* 3 (1995) ("As of December 1995, twenty-seven states and the District of Columbia have enacted statutes that protect from disclosure, to differing degrees, confidential communications that arise from the relationship between sexual assault and/or domestic violence victims and their counselors."). In light of the policies expressed in *Jaffee,* this Court agrees that a client of a rape counselling center holds some form of a federal privilege for communications with a rape crisis counsellor, a privilege that the client can waive. [3]

*paper or memorandum relates.''* (emphasis added).

**3.** Citing *Whalen v. Roe,* 429 U.S. 589, 599, 604, 97 S.Ct. 869, 876, 878–79, 51 L.Ed.2d 64 (1977), the rape crisis center also argues that K. has a constitutional right to privacy in her counselling communications. While this is argument has

This Court need not determine the degree to which the confidential communications are protected from disclosure (i.e., whether the privilege is absolute or qualified) because, here, the client has waived the privilege. *See In re Zuniga*, 714 F.2d 632, 639 (6th Cir. 1983) ("Just as the recognition of privileges must be undertaken on a case-by-case basis, so too must the scope of the privilege be considered.").

b. *Waiver*

■ Deciding that there is a federal privilege under *Jaffee* is only the first step of the inquiry. This Court must also determine if there has been a lawful waiver of K.'s rights. K. has granted a limited waiver for purposes of permitting this Court to conduct an *in camera* review without prejudice to assertion of the privilege should this Court determine that the records contain exculpatory materials. This is consistent with longstanding federal procedure for handling disputes involving claims of privilege in the context of criminal cases where the constitutional due process rights of a defendant must be weighed against the privileges of another. *See generally Pennsylvania v. Ritchie*, 480 U.S. 39, 60, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40 (1987) (suggesting that *in camera* review by a court of state records pertaining to a child abuse investigation would properly accommodate the state's compelling interest in protecting child-abuse information and the defendant's compelling due process interest in information that may change the outcome of the trial); *United States v. Wilson*, 798 F.2d 509, 514 (1st Cir.1986) (reviewing documents protected under the attorney-client privilege to determine if any were exculpatory); *United States v. Cuthbertson*, 630 F.2d 139, 148 (3rd Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981) (permitting *in camera* review of statements of a government witness despite qualified journalistic privilege because of the unavailability from another source).

The Center argues that K. did not knowingly and voluntarily relinquish her rights.

some force, because this Court concludes that there is a federal privilege, the privacy issue need

According to affidavits, K. had initially decided to object to an *in camera* review by the Court but changed her mind after discussions with the prosecutors. The Center claims, without record support, that K. was improperly pressured by the government; and that she was relying on misinformation when she signed the waiver. The government has submitted an affidavit from an agent of the Federal Bureau of Investigation. K. allegedly told the FBI agent that the rape crisis center was pressuring her, not the prosecutor.

In light of these cross-allegations of undue pressure, the government requested an *in camera* hearing to make findings of fact concerning the voluntariness of K.'s waiver. The Court denied that request without prejudice and, instead, appointed experienced pro bono counsel to stand by ready to provide advice to K. should she desire it. However, K. chose not to use this judicial resource. In light of the absence of any further communication from K. or her counsel and the affidavits before the Court, the Court finds a knowing and intelligent waiver of K.'s privilege.

c. *Independent Standing*

■ Despite K.'s written waiver, the Center insists it has independent standing to argue that disclosure to the court even in an *in camera* proceeding is unlawful in light of the absolute state-created privilege in Section 20J. As a general matter, under state law, the Center, as keeper of the records, is correct that it is "expected to assert *its client's interest* in the confidentiality of records in its possession." *Commonwealth v. Fuller*, 423 Mass. 216, 228, 667 N.E.2d 847, 856 (1996) (emphasis added). This is consistent with federal law. *See, e.g., In re Grand Jury Investigation*, 918 F.2d 374, 385 n. 15 (3rd Cir.1990) (suggesting that a clergyperson may assert a privilege on behalf of a communicant); *Fisher v. United States*, 425 U.S. 391, 402 n. 8, 96 S.Ct. 1569, 1577 n. 8, 48 L.Ed.2d 39 (1976) (noting that "it is universally accepted that the attorney-client privilege may be raised by the attorney").

not be resolved.

However, when the client waives her privilege, as in this case, the Center's standing argument is without merit. The Center does not have independent standing to assert its client's privilege. *See United States v. Abrahams,* 905 F.2d 1276, 1283 n. 9 (9th Cir.1990) ("[O]f course ... the attorney in the attorney-client relationships[ ] may not assert the privilege for himself."); *In re A.V. Jellen,* 521 F.Supp. 251, 253 (N.D.W.Va.1981) (finding that the "purpose of [doctor-patient] privilege is the protection of the patient, and it cannot be asserted by the physician" independent of patient).

### *ORDER*

The Court orders the Rape Crisis Services of Greater Lowell, Inc. to produce all rape counselling documents pertaining to the alleged rape by October 22, 1996 at 2 p.m. for *in camera* review. A show cause hearing will be held for possible contempt sanctions on October 22, 1996 at 3:15 p.m. if the documents are not produced.

### ORDER SUPPLEMENTING DECISION

After hearing on October 22, 1996, I supplement my Memorandum and Order, dated October 21, 1996, in three respects as follows:

1. Based on the representations of Ms. Janice Howe, Esq., who was appointed to represent the rape complainant *pro bono,* I find that the limited waiver was knowing and voluntary. The rape complainant did seek Ms. Howe's advice, and I am satisfied that there was no undue pressure on the rape complainant which would undermine the validity of the waiver.

2. After *in camera* review, I find that nothing in the rape counselling records was exculpatory or material to the defense.

3. Other than certain identifying information about the rape complainant, most of the information in the counselling records was *not* privileged communication. Rather, the records contain the dates of contact, the length of contact, the nature of the contact (i.e., telephonic or face-to-face), and the name of the rape crisis counsellor. *See generally In re Zuniga,* 714 F.2d 632, 640 (6th Cir. 1983), *cert. denied* 464 U.S. 983, 104 S.Ct.

426, 78 L.Ed.2d 361 (1983) (concluding that "as a general rule, the identity of a patient or the fact and time of his treatment does not fall within the scope of the psychotherapist-patient privilege"); *In re Grand Jury Subpoenas Duces Tecum,* 638 F.Supp. 794, 799 (D.Me.1986) (holding that "no privilege precludes disclosure of the 'identity of a [non-Medicare or non-Medicaid] patient or the fact and time of his treatment.'"); *cf. In re Grand Jury Subpoena,* 925 F.Supp. 849, 855 (D.Mass.1995) (holding that identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege).