JANE STUDENT 1, etc., et al., Plaintiffs,

v.

Charles WILLIAMS, et al., Defendants.

No. CIV.A.01–0036–RV–S.

United States District Court,
S.D. Alabama,
Northern Division.

Jan. 7, 2002.

Mary A. Goldthwaite, Karen Sampson Rodgers, McPhillips, Shinbaum & Gill, LLP, Montgomery, AL, for plaintiffs.

Mark S. Boardman, Dana Jeanae Bolden, Boardman, Carr & Weed, P.C., Chelsea, AL, James R. Seale, Jeffrey Norman Mykkeltvedt, Elizabeth Brannen Carter, Hill, Hill, Carter, Franco, Cole & Black, P.C., Clyde C. Owen, Jr., Montgomery, AL, for defendants.

Katie A. Himes, Cahaba Center for Mental Health, Selma, AL, pro se.

## ORDER

STEELE, United States Magistrate Judge.

This matter is again before the Court on a motion to quash subpoena filed by non-party Cahaba Center for Mental Health and Mental Retardation ("Cahaba") and on a motion to compel filed by defendants Charles and Penny Williams ("the Williams defendants"). (Docs.37, 39). The subpoenas seek all records maintained by Cahaba concerning any of the four plaintiffs. (Doc. 52 at 2). The parties appear to agree that the records of six specific individuals presently or formerly employed by Cahaba are encompassed in the records sought by subpoena. (Doc. 39 at 2–3; Doc. 48 at 4).

By order entered December 6, 2001, the Court held that the federal law of privilege applies and directed the parties to submit additional briefing concerning the scope of the privilege as applicable to this case. (Doc. 49). The parties have done so, (Docs.52, 53), and the pending motions are now ripe for resolution.

The Supreme Court established a federal psychotherapist privilege applicable to licensed psychiatrists, licensed psychologists and licensed social workers in *Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). It is uncontroverted that four of the six employees at issue carry some form of professional license.[1] It is also uncontroverted that the other two employees are not licensed in any relevant field.[2] The Williams defendants acknowledge that licensed social workers fall within the federal privilege but argue that licensed professional counselors do not. (Doc. 52 at 1). The plaintiffs, in turn, argue that unlicensed professionals are covered by the privilege. (Doc. 53 at 2–4). The Court rejects both positions.

The Williams defendants offer no rationale for their position, and the Court discerns none. The *Jaffee* Court identified three reasons for extending the psychotherapist privilege to licensed social workers: (1) they "provide a significant amount of mental health treatment"; (2) "[t]heir clients include the poor and those of modest means who could not afford the assistance of a psychia-

---

1. The Williams defendants maintain that Wayne Williams, Peggy Williams, Emma Peoples and Martha Morrison are all licensed professional counselors. (Doc. 46 at 3). The plaintiffs represent that, while Wayne and Peggy Williams are licensed professional counselors, Peoples and Morrison are licensed social workers. (Doc. 48 at 4). The parties have introduced no evidence in support of their assertions, but the resolution of the pending motions is not affected by this omission.

2. The plaintiffs describe Godfrey Lyons and Connie Wiltbanks only as possessing advanced degrees. (Doc. 48 at 4).

trist or psychologist ... but [their] counseling sessions serve the same public goals"; and (3) "the vast majority of States explicitly extend a testimonial privilege to licensed social workers." 518 U.S. at 15–17, 116 S.Ct. 1923. Each of these rationales applies as well to licensed professional counselors.

First, licensed professional counselors provide a significant amount of mental health treatment. The very title reflects that such persons engage in the profession of "counseling," and the purpose of the psychotherapist privilege is to "allo[w] individuals to receive confidential counseling." *Jaffee v. Redmond*, 518 U.S. at 11 n. 10, 116 S.Ct. 1923. Indeed, this consideration applies with more force to licensed professional counselors than it does to licensed social workers; while a social worker has a wide range of duties, many of which have nothing to do with counseling, the licensed professional counselor's primary if not exclusive mission is to provide such counseling.

Second, the counseling provided by licensed professional counselors "serve[s] the same public goals" as that provided by licensed psychiatrists and psychologists. The Supreme Court identified the public good underlying the psychotherapist privilege as that of promoting "the mental health of our citizenry," and the private good as that of encouraging the development of the confidential relationship between professional and patient that makes possible the advancement of the public good. 518 U.S. at 10–11, 116 S.Ct. 1923. By fostering the private goal of confidentiality, applying the privilege to licensed professional counselors promotes the public good as it does with respect to licensed social workers.

Third, the Court's non-exhaustive research reveals that over 30 states have recognized a privilege explicitly covering licensed (or certified or registered) professional counselors.[3] Some of the jurisdictions that do not expressly recognize such a privilege appear not to license professional counselors to begin with. Moreover, every state that does not expressly protect communications with licensed professional counselors does protect communications with mental health professionals and counselors,[4] marriage, family and/or child counselors,[5] and/or rape, sexual assault and/or domestic violence counselors.[6] The definitions of these terms in many cases is broad enough to encompass licensed professional counselors; even where they are not, the extension of a privilege to similar sorts of counselors indicates the states' recognition that confidential communications with counselors merit protection.

■ The recognition of federal privileges is to be governed by the principles of the common law as interpreted by federal courts "in the light of reason and experience." Fed. R.Evid. 501; *accord Jaffee v. Redmond*, 518 U.S. at 8, 13, 116 S.Ct. 1923. The "reason" supplied by the Supreme Court in *Jaffee*, and the "reason and experience" of the states outlined above, support the protection of confidential communications with licensed pro-

**3.** *See* Ala. R. Evid. 503A; Alaska R. Evid. 504; Ariz.Rev.Stat. §§ 32–3283, –3301; Ark.Code Ann. §§ 17–27–301, –311; Colo.Rev.Stat. §§ 12–43–218, 13–90–107(g); Conn. Gen.Stat. 52–146s; Del.Code Ann. tit. 24, § 3019; Ga.Code Ann. § 24–9–21; Idaho R. Evid. 517; 225 Ill. Comp. Stat. Ann. 107/75; Kan. Stat. Ann. § 5810; Ky. R. Evid. 506; Me.Rev.Stat. Ann. tit. 32, §§ 13851, 13862; Md.Code Ann., Courts and Judicial Proceedings § 9–109.1; Mich. Comp. Laws Ann. § 333.18117; Miss.Code Ann. § 73–30–17; Mo. Ann. Stat. § 337.540; Mont.Code Ann. §§ 37–23–201, –301; Neb.Rev.Stat. § 27–504; N.J. Stat. Ann. § 45:8B–49; N.C. Gen.Stat. §§ 8–53.8, 90–330; N.D. Cent.Code §§ 43–47–01, –09; Ohio Rev.Code Ann. § 2317 .02(G); Okla. Stat. Ann. tit. 59, § 1910; Or. R. Evid. 507; S.C.Code Ann. § 40–75–190; S.D. Codified Laws § 36–32–27; Tenn.Code Ann. § 63–22–114; Utah R. Evid. 506; Va.Code Ann. § 8.01–400.2; W. Va.Code § 30–31–13; Wis. Stat. Ann. § 905.04; Wyo. Stat. Ann. § 33–38–109.

**4.** *See* Fla. Stat. Ann. § 90.503; Ind.Code §§ 25–23.6–6–1, 25–23.6–1–3.8; Iowa Code Ann. § 622.10; La.Code Evid. Ann. art. 510; N.M. Stat. Ann. §§ 61–9A–3(L), –27; R.I. Gen. Laws §§ 5–63.2–18, 9–17–24; Tex.R. Evid. 510; Vt. R. Evid. 503, Vt. Stat. Ann. § 3261; Wash. Rev. Code Ann. §§ 18.19.020(3), —.180.

**5.** *See* Cal. Evid.Code § 1010; D.C.Code Ann. §§ 7–1201.01(11), 14–307(a); Nev.Rev.Stat. §§ 49.247, 641A.060.

**6.** *See* Haw. R. Evid. 505.5; Mass. Gen. Laws Ann. ch. 233, §§ 20J, 20K; Minn.Stat. § 595.02(k); N.H.Rev.Stat. Ann. § 173–C:2; N.Y.C.P.L.R. 4510; 23 Pa. Cons.Stat. Ann. § 6116; 42 Pa. Cons.Stat. Ann. § 5945.1.

fessional counselors. Accordingly, the Court concludes that the federal psychotherapist privilege extends to licensed professional counselors.

In *Oleszko v. State Compensation Insurance Fund*, 243 F.3d 1154 (9th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 208, 151 L.Ed.2d 148 (2001), the Ninth Circuit "h[e]ld that the psychotherapist-patient privilege recognized in *Jaffee v. Redmond* extends to communications with EAP personnel." *Id.* at 1159. The plaintiffs rely primarily on *Oleszko* for the proposition that the federal privilege extends to unlicensed persons such as Wiltbanks and Lyons. (Doc. 53 at 2–4).[7]

█ The personnel at issue in *Oleszko* were shown to have "backgrounds in psychology or social work, including relevant clinical and/or field experience" and to "regularly participate in ongoing training and education on EAP-related issues," and they were "trained as counselors, [we]re held out as counselors in the workplace and, like psychotherapists, their job [wa]s to extract personal and often painful information from employees in order to determine how best to assist them." 243 F.3d at 1156–57. The plaintiffs, despite months to research the issue and a court order encouraging them to do so, have made no similar showing concerning Wiltbanks and Lyons.

Nor is the Court persuaded that *Oleszko* was correctly decided even on its very different facts. As a telling threshold matter, the Ninth Circuit did not acknowledge the bedrock principle that American jurisprudence is firmly biased in favor of testimony and against privilege such that, "[w]hatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

Second, the *Oleszko* Court missed the significance of the Supreme Court's limitation of the privilege to licensed professionals. This restriction was not required by the facts of the case, because the case did not involve a psychiatrist or psychologist, licensed or unlicensed. Had it believed such a privilege appropriate, the Court could have extended the privilege to unlicensed psychiatrists and/or psychologists, as some states have done. That the Court did not do so suggests that it considered the professionals' licensed status to be an important prerequisite to the privilege.

Among other functions, the licensing requirement establishes a bright line for the boundaries of the privilege, so that both professional and patient may be clear about the confidentiality of their communications. Moreover, the *Jaffee* Court identified the overriding public good justifying the privilege as that of promoting the mental health of the citizenry; licensure provides a minimum, if rough, measure of assurance that the privilege is implicated only when the patient communicates with one who, by satisfying the requirements for licensure, has demonstrated some threshold level of ability to assist the patient in improving her mental health. Thus, for example, the 1992 advisory committee notes accompanying proposed Federal Rule of Evidence 504 emphasized that limiting the privilege to "licensed" psychologists "is believed to be justified by the number of persons, other than psychiatrists, purporting to render psychotherapeutic aid and the variety of their theories." 56 F.R.D. 183, 243 (1972).

Third, the *Oleszko* Court ignored the *Jaffee* Court's emphasis on the status of state privilege laws in determining whether to create or expand a federal privilege. While the *Jaffee* Court stressed the importance of finding a "consensus" of state privilege law favoring the privilege, 518 U.S. at 13, 116 S.Ct. 1923, the *Oleszko* Court established an EAP privilege even though only seven or eight states have done so. 243 F.3d at 1158–59.

7. The plaintiffs also cite *Greet v. Zagrocki*, 1996 WL 724933 (E.D.Pa.1996), and *United States v. Lowe*, 948 F.Supp. 97 (D.Mass.1996). The *Greet* Court, however, offered no explanation for its conclusion that *Jaffee* "compels" extension of the privilege to EAP files. *Lowe* noted only that a thin majority of states protects communications with rape counselors to some degree, without considering the importance of a licensing requirement in defining the scope of a federal privilege. *Oleszko* is the only case to cite either opinion for a relevant proposition.

The Court's research reveals that there is no consensus among the states that unlicensed professionals such as social workers and professional counselors are covered by the privilege; rather, there is near unanimity that the privilege does *not* extend to such unlicensed persons. Of the 46 jurisdictions the Supreme Court identified as recognizing a social worker privilege,[8] all but eight expressly limit the scope of the privilege to persons actually licensed, registered or certified as social workers.[9] The tale is similar with respect to professional counselors. This state experience does not support, but rather weighs against, extension of the privilege to unlicensed professionals.

■ In summary, the Court concludes that the federal psychotherapist privilege does not extend to unlicensed social workers or unlicensed professional counselors.[10]

■ The psychotherapist privilege attaches only to "confidential communications between [the licensed professional] and her patien[t] in the course of diagnosis and treatment" or "in the course of psychotherapy." *Jaffee v. Redmond*, 518 U.S. at 15, 116 S.Ct. 1923. The Williams defendants argue that the plaintiffs have not shown either that the communications at issue are confidential or that they were made in the course of psychotherapy. (Doc. 52 at 2–3).

■ With respect to confidentiality, Jane Student 2 was seen by several licensed professional counselors at Cahaba, a mental health facility. Because these individuals were identified in the plaintiffs' initial disclosures, it may be assumed that they saw Jane Student 2 in connection with alleged mental injuries resulting from the defendants' alleged wrongful conduct. This was not a casual encounter, and the Williams defendants have offered no reason to believe that communications between Jane Student 2 and the licensed professional counselors and licensed social workers at Cahaba could have been anything other than confidential. On the present evidence and argument, the Court cannot conclude that the communications at issue were not confidential.[11]

■ With respect to the "course of psychotherapy," the *Jaffee* Court limited the privilege to communications "between" the patient and her psychotherapist. 518 U.S. at 15, 116 S.Ct. 1923. As in *Jaffee*, this protects the conversations themselves from disclosure, as well as the psychotherapist's notes of such conversations. *Id.* at 18, 116 S.Ct. 1923. It also necessarily protects information from such conversations appearing in records prepared by someone other than the psychotherapist (as long as the third person's receipt of the information does not destroy confidentiality and thus the privilege). As the Williams

8. *See* 518 U.S. at 17 n. 17, 116 S.Ct. 1923.

9. *See* Ariz.Rev.Stat. § 32–3283; Ark.Code Ann. § 17–103–107; Del.Code Ann. tit. 24, § 3913; Fla. Stat. Ann. § 90.503; Ga.Code Ann. § 24–9–21; Idaho Code § 54–3213; 225 Ill. Comp. Stat. Ann. 20/16; Ind.Code §§ 25–23.6–1–3.8, 25–23.6–6–1; Iowa Code Ann. § 622.10; Kan. Stat. Ann. § 65–6315; Ky. R. Evid. 507; La.Code Evid. Ann. art. 510; Me.Rev.Stat. Ann. tit. 32, § 7005; Md.Code Ann., Courts and Judicial Proceedings § 9–121; Mass. Gen. Laws Ann. ch. 112, § 135A; Mich. Comp. Laws Ann. §§ 333, 18513; Minn.Stat. § 595.02(g); Miss.Code Ann. §§ 73–53–7, –29; Mo. Ann. Stat. § 337.636; Mont.Code Ann. § 37–22–401; Neb.Rev.Stat. §§ 71–1,304, –1,335; Nev.Rev.Stat. §§ 49.251, —.252; N.H.Rev.Stat. Ann. §§ 330–A:18, —A:32; N.J. Stat. Ann. § 45:15BB–13; N.M. Stat. Ann. § 61–31–24; N.Y.C.P.L.R. 4508; N.C. Gen.Stat. § 8–53.7; Ohio Rev.Code Ann. § 2317.02(G); Okla. Stat. Ann. tit. 59, § 1261.6; Or.Rev.Stat. § 40.250; R.I. Gen. Laws § 5–39.1–4; S.C.Code Ann. § 19–11–95; S.D. Codified Laws § 36–26–30; Tenn.Code Ann. § 63–23–107; Va.Code Ann. § 8.01–400.2; Wash. Rev.Code Ann.

§§ 18.19.020, —.180; W. Va.Code § 30–30–121; Wyo. Stat. Ann. §§ 33–38–106, –109. Seven jurisdictions extend the privilege to persons reasonably believed to be licensed as social workers. *See* Cal. Evid.Code §§ 1010, 1014; Conn. Gen. Stat. § 52–146q; D.C.Code Ann. §§ 7–1201.01, 14–307; Tex.R. Evid. 510; Utah R. Evid. 506; Vt. R. Evid. 503; Wis. Stat. Ann. § 905.04. One jurisdiction appears to protect communications with an unlicensed social worker regardless of the client's reasonable belief as to her licensure. *See* Colo.Rev.Stat. §§ 12–43–218, 13–90–107(g).

10. Because neither Lyons nor Wiltbanks is alleged to be a psychiatrist or psychologist, it is unnecessary to consider whether actual licensure is a prerequisite to the federal privilege as to such professionals.

11. Should depositions or other discovery in this action cast doubt on the confidentiality of these communications, the Williams defendants may timely seek to revisit the issue.

defendants note, they have requested *all* of Cahaba's records concerning the plaintiffs, (Doc. 52 at 2), and some—billing records, as an obvious example—almost certainly may be produced without disclosing any communications between the plaintiffs and the four licensed social workers and professional counselors at issue.

The parties' briefing proceeded on the understanding that Jane Student 2 was the only plaintiff to be seen by anyone connected with Cahaba. In their most recent filing, however, the plaintiffs suggest that other plaintiffs may also have been seen at Cahaba. (Doc. 53 at 4–5). The Court's reasoning and ruling apply with equal force with respect to all four plaintiffs.

For the reasons set forth above and in the Court's previous order, the Williams defendants' motion to compel is **granted** to the extent that Cahaba is **ordered**, within 14 days of the date of entry of this order, to produce all documents responsive to the Williams defendants' subpoenas other than those documents or portions of documents reflecting communications between any of the plaintiffs and Wayne Williams, Peggy Williams, Emma Peoples and/or Martha Morrison, made during a counseling session or otherwise for the purpose of obtaining or providing psychotherapy. In all other respects, the Williams defendants' motion to compel is **denied**. Cahaba's motion to quash subpoena is **granted** in part and **denied** in part as set forth above.